DECISION AND JUDGMENT ENTRY
{¶ 1} Erin Mullins, fka Erin Kimbler, appeals the decision of the Scioto County Court of Common Pleas, Domestic Relations Division, which removed her as the residential parent and named the child's father, Martin Edward Kimbler as the residential parent of their minor child, Jonathan. Mullins contends that the trial court erred in permitting Kimbler's late filing of his proposed findings of fact and conclusions of law, and in adopting those findings and conclusions as its own. Because Civ.R. 52 provides that only the findings of fact and conclusions of law made by the court constitute part of the record, and further because the record contains some competent, credible evidence supporting the trial court's findings, we disagree. Next, Mullins contends that the trial court erred in granting temporary custody to Kimbler and in finding her in contempt. Because Mullins purged her contempt, and because the court's entry of custody supercedes the temporary custody order, the issues Mullins raises in this assignment of error are moot. Finally, Mullins contends that the trial court erred in finding a change of circumstances supporting a change of custody from her to Kimbler, in granting Kimbler sole authority over Jonathan's non-emergency medical care, and in ordering her to pay child support. Because we find that the record contains some competent, credible evidence supporting the trial court's decision regarding Jonathan's custody and medical care, we disagree in part. However, because the record contains no evidence supporting the income attributed to Mullins for purposes of calculating child support, we agree in part. Accordingly, we affirm the judgment of the trial court in part, reverse in part, and remand this matter to the trial court for calculation of Mullins' child support obligation.
 I. {¶ 2} The trial court granted Mullins and Kimbler a divorce on January 9, 2001. The court designated Mullins as the residential parent and legal guardian of the parties' only child, Jonathan, d.o.b. March 10, 2000. The court order provided that Kimbler was entitled to regular visitation with Jonathan. Additionally, due to Jonathan's unique medical condition, the court provided Kimbler with the right to receive Jonathan's medical records, receive notice of his medical appointments, and be present at his medical appointments.
 {¶ 3} The parties filed numerous post-decree motions relating to visitation and to Jonathan's medical treatment. On August 4, 2003, the court adopted a magistrate's decision which, in relevant part, granted one of Kimbler's motions for contempt and ordered that he receive twenty-one days of make-up visitation.
 {¶ 4} In October of 2003, Kimbler caused an abuse/neglect proceeding to be instituted against Mullins in the Scioto County Court of Common Pleas, Juvenile Division. While the case was pending, Kimbler had physical custody of Jonathan. On May 14, the juvenile court dismissed the complaint, and ordered custody restored to Mullins, as provided by the divorce decree.
 {¶ 5} Kimbler filed a motion for temporary emergency custody on May 17, 2004. Mullins filed motions for contempt and to set child support on May 20, 2004. She also filed a motion to restore physical custody and for contempt on May 26, 2004. During this time, Kimbler retained physical custody of Jonathan, claiming that he was exercising his right to the twenty-one days of make-up visitation granted by the court's prior contempt order.
 {¶ 6} The court held its first hearing on the custody and new contempt motions on June 2, 2004. At the hearing, the court ordered the parties to cooperate in permitting Jonathan to continue to see the specific doctors that each parent preferred. The court further ordered that each parent continue to administer the treatments and medications prescribed by the listed physicians. The court also ordered that Jonathan resume his prescribed speech, occupational and physical therapies, and that he attend head start preschool. The court ordered that neither parent attempt to restrict the other parent's access to Jonathan's medical records, and ordered that the parents provide each other with a minimum of seven days written notice prior to the date of any scheduled medical appointment. The court ordered that each party provide complete insurance information to all medical providers for Jonathan.
 {¶ 7} As to other matters, the court ruled that Kimbler's twenty-one day make-up visitation would end on June 4, 2004, and ordered that he return Jonathan to Mullins on that day. The court modified the visitation order to provide that, in addition to his scheduled visitation, Kimbler is entitled to visitation when Mullins is working. The court ordered Mullins to provide a written copy of her weekly work schedule to facilitate this visitation. The court ordered both parties to immediately commence individual counseling and to submit to a psychological evaluation and file it with the court by June 30, 2004. Finally, the court ordered that Kimbler seek work, and established a temporary child support obligation requiring Kimbler to pay fifty dollars per month. The court issued a written entry on June 11, 2004, which amended the divorce decree as set forth above, effective June 2, 2004.
 {¶ 8} Kimbler filed a motion for contempt on June 15, 2004, alleging that Mullins failed to abide by the court's amended divorce decree. Specifically, Kimbler alleged that Mullins failed to resume Jonathan's physical, occupational and speech therapies, and failed to enroll him in head start preschool. Additionally, Kimbler alleged that Mullins failed to commence individual counseling as required by the court's order. Kimbler alleged that Mullins failed to provide her work schedule and permit him to care for Jonathan during the hours that she works. Finally, Kimbler alleged that Mullins failed to provide him with medical insurance provider information. Kimbler also renewed his motion for temporary custody.
 {¶ 9} On September 23, 2004, Mullins filed a notice of relocation with the court, stating that she had moved to Frazeysburg, Ohio. Mullins noted in her filing that, upon receipt, the court could schedule a hearing to determine whether it is in the best interest of the child to revise the visitation schedule. It appears Mullins hoped the court would impose a long distance visitation schedule upon Kimbler.
 {¶ 10} On September 29, 2004, Kimbler filed another four motions for contempt alleging, among other things, that Mullins failed to comply with the court's orders with regard to Jonathan's medical care, that Mullins failed to provide Kimbler with her home and work contact information, and that Mullins failed to provide Kimbler with companionship with Jonathan as required by the court order. In addition, Kimbler again renewed his motion for temporary custody and requested that the court modify custody and name him Jonathan's residential parent.
 {¶ 11} Jonathan's court-appointed guardian ad litem ("GAL") filed a report and recommendation on September 1, 2004 and a supplemental report on October 22, 2004. The GAL recommended that the court modify custody and name Kimbler the residential parent, because she believed it was in Jonathan's best interest. The GAL noted her observations that Kimbler demonstrates an appropriate relationship with Jonathan, and he takes appropriate actions with regard to Jonathan's well-being and his medical care. Mullins, on the other hand, refused to cooperate with the court-appointed GAL to such an extent that the GAL had yet to personally meet with Mullins by October 22, 2004. The GAL noted that, in her limited communication with Mullins and her observation of a portion of Mullins' testimony before the Juvenile Court, Mullins exhibited so much hostility toward Kimbler that she was unable to directly answer questions about herself, and instead continually turned questions around to make disparaging comments about Kimbler.
 {¶ 12} The court heard continuing testimony on Mullins' and Kimbler's motions on September 1, 2004 and October 22, 2004. At the conclusion of the October 22, 2004 hearing, the court ruled upon Kimbler's motions for temporary emergency custody and for contempt; upon Mullins' notice of relocation and her motions for contempt, to set child support, and for immediate return of the child; upon Mullins' counsel's motion to withdraw; and upon the GAL's report. The court issued an October 25, 2005 entry journalizing its bench orders from the hearing. The court found that Kimbler was not in contempt and granted Kimbler's motion for temporary custody.
 {¶ 13} The court found that Mullins was in contempt of court. The court sentenced Mullins to thirty days in the Scioto County Jail based upon the court's May 3, 2004 order of contempt, and sentenced her to sixty days in the Scioto County Jail based upon the present finding of contempt. The court ordered that Mullins immediately deliver Jonathan to Kimbler. When Mullins informed the court that Jonathan was not in the state, the court remanded Mullins to the custody of the Scioto County Sheriff pending transfer of physical custody of Jonathan to Kimbler. On October 25, 2004, Mullins caused Jonathan to be delivered to Kimbler, and the court ordered her immediate release from incarceration.
 {¶ 14} The court held a hearing on the remaining issues on December 17, 2004. The court required the parties to file proposed findings of fact and conclusions of law by January 15, 2005. January 15, 2005 fell on a Saturday, and the court was closed on January 17, 2005 for Martin Luther King Day. Mullins filed her proposed findings of fact and conclusions of law on January 18, 2005. Kimbler filed his proposed findings of fact and conclusions of law on January 27, 2005.
 {¶ 15} Mullins filed a motion to strike Kimbler's proposed findings and conclusions. The court did not rule on Mullins' motion to strike, but effectively overruled the motion when it adopted Kimbler's proposed findings and conclusions as its own on February 8, 2005. Finally, on March 5, 2005, the court issued an entry designating Kimbler as the sole residential parent of Jonathan and granting Mullins visitation with Jonathan on the long distance schedule provided for in the local rules. Additionally, the court ordered Mullins to pay child support to Kimbler, effective October 25, 2004.
 {¶ 16} Mullins appeals, asserting the following assignments of error: I. "The trial court's acceptance of the findings of fact and conclusions of law submitted by the defendant well after the deadline for same and only after the filing of plaintiff's proposed findings of fact and conclusions of law violates the rules of procedure such to constitute prejudice to plaintiff-appellant, per se." II. "The trial court erred in granting temporary custody to defendant-appellee and in finding plaintiff in contempt." III. "The trial court erred its (sic) decision designating defendant-appellee father as residential parent, in its grant of long distance visitation when appellant resides in Scioto County, in its award of child support based upon an income amount not of record, in awarding arrearage to defendant when substantial arrearage is due from him to plaintiff and in adopting the findings of fact and conclusions of law of defendant-appellee, as the same are contrary to law and not supported by the record nor by clear and convincing evidence."
 II. {¶ 17} In her first assignment of error, Mullins contends that the trial court erred in permitting Kimbler to file his proposed findings of fact and conclusions of law after the deadline. Additionally, Mullins asserts in her third assignment of error that Kimbler's proposed findings of fact and conclusions of law are contrary to the evidence, and thus that the trial court erred in adopting them.
 {¶ 18} First, Mullins contends that the trial court violated the rules of procedure, and caused her prejudice per se, by accepting Kimbler's tardy filing of his proposed findings of fact and conclusions of law. Specifically, the trial court ordered that the parties submit their proposed findings of fact and conclusions of law by January 18, 2005. Mullins filed her proposed findings of fact and conclusions of law on that date. Kimbler filed his on January 27, 2005.
 {¶ 19} We agree that, pursuant to Civ.R. 6(B), a trial court errs in permitting a late filing when the party fails to request an extension of time prior to the deadline and fails to file a motion alleging excusable neglect. See Miller v. Lint (1980),62 Ohio St.2d 209, 214. Specifically, Civ.R. 6(B) provides: "When by these rules or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *."
 {¶ 20} Kimbler contends that his counsel requested an extension of time "without motion," and that the trial court acted within its discretion in granting his request. In particular, Kimbler's counsel states that her father's sudden illness, which resulted in his death on January 22, 2005, caused her to miss the filing deadline. Kimbler asserts that both the court and Mullins were aware of these circumstances, and that the court approved an extension of time.
 {¶ 21} A trial court speaks only through its journal entries. See In re Adoption of Gibson (1986), 23 Ohio St.3d 170, 173, at fn. 3. The record here does not contain an entry reflecting that the trial court granted a request for an extension of time, made by motion or otherwise, prior to the January 18, 2005 deadline. While the sudden illness and death of an immediate family member of counsel undoubtedly would qualify Kimbler for an extension based on "excusable neglect," Kimbler did not file a motion requesting the post-deadline extension as required by Civ.R. 6(B)(2). Therefore, we find that the trial court erred by accepting Kimbler's late filing.
 {¶ 22} Despite this error, we find that the late filing caused no prejudice to Mullins. Mullins cites no authority for her contention that the trial court's action caused her prejudice "per se." Civ.R. 52 expressly provides that, while the court may require the parties to submit proposed findings of fact and conclusions of law, "only those findings of fact and conclusions of law made by the court shall form part of the record." Thus, under Civ.R. 52, the parties' proposed findings do not even comprise part of the record. See Cleveland v. Assn. of ClevelandFire Fighters, Local 93 Int'l Assn. of Fire Fighters (1991),73 Ohio App.3d 220, 227.
 {¶ 23} Moreover, the trial court is free to make any findings and conclusions, as long as the findings are supported by some competent, credible evidence and not contrary to law. When there are no apparent inaccuracies in a party's proposed findings, and they are not contrary to the manifest weight of the evidence, the court does not err in adopting them verbatim. Adkins v. Adkins
(1988), 43 Ohio App.3d 95, 98, citing Paxton v. McGranahan
(1985), 25 O.B.R. 352, 356.
 {¶ 24} Here, as set forth more fully below in our analysis of Mullins' third assignment of error, we find that the record contains some competent, credible evidence to support the trial court's findings. Thus, Mullins did not suffer prejudice from the court's adoption of Kimbler's proposed findings of fact and conclusions of law. Accordingly, we overrule Mullins' first assignment of error.
 III. {¶ 25} In her second assignment of error, Mullins asserts that the trial court erred in granting temporary custody to Kimbler and in finding her in contempt by its October 25, 2004 entry.
 {¶ 26} The court granted temporary custody to Kimbler while Kimbler's motion for a modification of custody based upon a change of circumstances was pending. In the syllabus of Colom v.Colom (1979), 58 Ohio St.2d 245, the court stated: "In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree." Thus, under circumstances such as a dispute over custody in a divorce, the court's final order supercedes the temporary orders, and corrects any error. Smith v. Quigg, Fairfield App. No. 2005-CA-01, 2006-Ohio-1494, at ¶ 36. See, also, Eichenberger v.Eichenberger (Oct. 29, 1998), Franklin App. No. 97APF12-1599;Wyss v. Wyss (1982), 3 Ohio App.3d 412, 413, 445 N.E.2d 1153. Thus, the temporary order merged into the final judgment and any error contained therein is now moot.
 {¶ 27} Likewise, Mullins' contention that the trial court erred by finding her in contempt for failing to give Kimbler access to Jonathan during his parenting time is moot. An appeal from a civil contempt finding and sentence becomes moot when a party purges herself of the contempt or serves the sentence imposed by the court. See Bartkowiak v. Bartkowiak, Vinton App. No. 04CA596, 2005-Ohio-5017, at ¶ 10 (completion of sentence renders civil contempt moot); In re Knight (Mar. 16, 1994), Ross App. No. 93CA1965 (compliance with purge order renders civil contempt moot); Marx v. Marx, Cuyahoga App. No. 82021, 2003-Ohio-3536, at fn.1 (same). Here, the trial court found that Mullins failed to cooperate in Jonathan's visitation and medical treatment as ordered by the court. The court imposed a sentence for contempt, and ordered that Mullins immediately deliver Jonathan to Kimbler and stop interfering with medical treatment sought by Kimbler. The court only ordered Mullins remanded to the custody of the Scioto County Sheriff after it learned that Mullins would not immediately deliver Jonathan to Kimbler. The record reflects that Mullins served a portion of her jail sentence, and the court ordered her immediate release after she delivered Jonathan to Kimbler. The court found, and Mullins concedes in her brief, that she purged the contempt.
 {¶ 28} Because we find that both the issues Mullins raises in her second assignment are moot, we decline to address them. See App.R. 12(A)(1)(c). Thus, we overrule Mullins' second assignment of error.
 IV. {¶ 29} In her third assignment of error, Mullins contends that the trial court erred in designating Kimbler as the residential parent, in awarding long-distance visitation, in calculating her child support obligation, in requiring her to pay arrearage child support when Kimbler owes arrearage support to her, and in adopting Kimbler's findings of fact and conclusions of law. In support of her assignment of error, Mullins raises three issues for our review: (1) whether the trial court's decision is supported by clear and convincing evidence; (2) whether a change in circumstances occurred; and (3) whether a change of custody is in Jonathan's best interest. Mullins contends that several of the trial court's findings are contrary to uncontroverted evidence in the record, and that they contradict the trial court's own prior findings.
 {¶ 30} A trial court enjoys broad discretion in custody proceedings. Davis v. Flickinger (1997), 77 Ohio St.3d 415, paragraph one of the syllabus. We will not disturb the trial court's decision regarding a motion for modification of custody unless the trial court abused that discretion. Miller v. Miller
(1988), 37 Ohio St.3d 71, 74. An "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219; Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
 {¶ 31} While the trial court has discretion to grant or deny a change of custody, the record must contain sufficient factual evidence to support the court's findings regarding the change in circumstances, the child's best interests, and the determination that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. Beekman v. Beekman (1994), 96 Ohio App.3d 783, 787. We will not reverse a judgment as being against the manifest weight of the evidence when the record contains some competent, credible evidence going to all the essential elements of the case. C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. In conducting our review, we must make every reasonable presumption in favor of the trial court's findings of fact.Myers v. Garson (1993), 66 Ohio St.3d 610, 614; Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Conflicts in testimony, especially in the area of custodial rights, are properly determined by the trier of facts. John A.L. v. SheriB., Lucas App. No. L-04-1250, 2005-Ohio-5357, at ¶ 28. We give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." SeasonsCoal Co. at 80.
 {¶ 32} R.C. 3109.04(E)(1)(a) provides in relevant part: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: * * * (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." "[A] custodial parent's interference with visitation by a noncustodial parent may be considered as part of a `change of circumstances' which would allow for modification of custody." Holm v.Smilowitz (1992), 83 Ohio App.3d 757, 773; Hinton v. Hinton,
Washington App. No. 02CA54, 2003-Ohio-2785, at ¶ 13.
 {¶ 33} Here, the trial court requested that the parties submit proposed findings of fact and conclusions of law before deciding whether a change of circumstances occurred and whether modifying custody is in Jonathan's best interest. The court adopted Kimbler's proposed findings and conclusions as its own. Mullins contends that the court erred in adopting Kimbler's proposed findings and conclusions. However, nothing prevents a trial court from adopting a party's proposed findings verbatim, as long as the findings are not contrary to the manifest weight of the evidence. Chardon Lakes, Inc. v. Great Lakes CrushingLtd., Geauga App. No. 2003-G02524, 2004-Ohio-7221; Satterfieldv. Ohio State Bd. of Registration for Professional Engineers andSurveyors (May 20, 1999), Adams App. No. 98CA670. Moreover, upon review of the trial court's findings and conclusions, we may decide the issue on different grounds than the trial court, so long as the record contains an evidentiary basis for our legal determination. Allin v. Hartzell Propeller, Inc.,161 Ohio App. 3d 358, 2005-Ohio-2751, at ¶ 14.
 {¶ 34} We find that the record contains some competent, credible evidence supporting the trial court's finding that a change of circumstances occurred and that it is in Jonathan's best interest for the court to designate Kimbler as his residential parent. Specifically, the record is replete with evidence that Mullins has repeatedly interfered with Kimbler's visitation and with Kimbler's rights with respect to Jonathan's medical care. Additionally, the record reflects that Mullins disregarded the court's orders regarding enrolling Jonathan in head start preschool and in physical, occupational, and speech therapy services. The court found no merit to Mullins' several motions for contempt, and determined that Kimbler is the parent more likely to facilitate visitation.
 {¶ 35} Based upon these findings, supported by some competent, credible evidence in the record, we cannot find that the trial court abused its discretion in determining that a change of circumstances occurred and that it is in Jonathan's best interest to designate Kimbler as his residential parent.
 {¶ 36} Additionally, we cannot find that the trial court abused its discretion when it ruled that the long distance visitation rules of Scioto County should govern Mullins' visitation schedule. While Mullins claims that she lives in Scioto County with her parents, the record does not establish that claim. She testified at the September 1, 2004 hearing that she lives in Wheelersburg, Ohio. Shortly after the hearing, according to Kimbler's October 22, 2004 testimony, Kimbler tried to call Mullins, and the outgoing announcement on her answering machine informed him that she and Jonathan were moving. Mullins filed a notice of relocation with the court on September 23, 2004. Her notice of relocation states that she resides in Frazeysburg, Ohio. Mullins has not disputed Kimbler's claim that Frazeysburg is more than 150 miles from Kimbler's home in Scioto County. Mullins did not file any further notices of relocation with the court.
 {¶ 37} Furthermore, even if we found that Mullins is not bound by the notice of relocation that she filed with the court, the court has discretion to depart from standard visitation guidelines as its sees fit. See, e.g., Hinton, supra, at ¶ 3. R.C. 3109.051(D) provides that, in establishing a specific parenting schedule, the court shall consider factors such as the parties' willingness to facilitate each other's parenting time or demonstrated lack of compliance with court ordered visitation, the mental health of the parties, and any other factor affecting the best interest of the child. Here, the record contains competent, credible evidence that Mullins is unwilling to facilitate Kimbler's parenting time, and that the Mullins' animosity toward Kimbler is extreme. Therefore, the court could reasonably determine that imposing a visitation schedule that required less frequent interaction or contact between Mullins and Kimbler would be in Jonathan's best interest.
 {¶ 38} Mullins also takes issue with the trial court's order that Kimbler "shall be solely responsible for all medical decisions regarding the minor child * * * and for all education decisions regarding the minor child." Mullins contends that the evidence presented at the hearing provides no basis to give credence to the medical opinions offered by Kimbler's providers over the opinions offered by her providers. Additionally, Mullins argues that the trial court's decision to permit only Kimbler to choose Jonathan's medical providers is contrary to the court's prior orders permitting both parties to choose medical providers.
 {¶ 39} We find that it does not matter whether the evidence presented supports a finding that Kimbler's medical providers are superior to Mullins' providers. The court recognized that the parties disagreed over the proper course of medical treatment for Jonathan, and tried to accommodate both parties by ordering that each could chose medical providers while the motion to modify custody was pending. The record undisputedly contains evidence that Kimbler selected appropriate providers for Jonathan. Additionally, the record contains some competent, credible evidence that Mullins interfered with Kimbler's ability to obtain medical care with providers he deemed appropriate. Specifically, Mullins refused to deliver Jonathan for appointments, and telephoned one of Kimbler's selected doctors to warn him that a "liability issue" could arise if he chose to treat Jonathan. Finally, the record contains some competent, credible evidence that Mullins has changed Jonathan's medical providers many times.
 {¶ 40} While the court's order permitting each party to select their own medical providers does not explicitly state that the order was only temporary, logic dictates that Jonathan cannot continue with two sets of medical providers indefinitely. Mullins herself argued below, and Dr. Turjoman's testimony confirms, that treating with dual providers simultaneously carries the risk that the courses of treatment will conflict. We cannot find that the trial court abused its discretion with its decision to vest the decision making authority over Jonathan's long-term medical care with his residential parent.
 {¶ 41} Next, we address Mullins' contention that the trial court erred in calculating her child support obligation, and in ordering her to pay an arrearage obligation when Kimbler owes her a substantial arrearage. Mullins contends that the trial court's calculation of her child support obligation and its allocation of arrearage obligations are contrary to the manifest weight of the evidence. We note that Mullins does not dispute the trial court's finding that the effective date of her child support obligation is October 25, 2004. Rather, Mullins challenges only the income upon which the computation was based, and the fact that the court chose to impose a regular arrearage payment obligation upon her despite Kimbler's arrearage.
 {¶ 42} Upon our review of the record, we find that it contains no evidence whatsoever that Kimbler owes a child support arrearage. The record contains a seek work order and imposes an obligation of fifty dollars per month upon Kimbler. The record contains no evidence that Kimbler failed to meet that obligation. Thus, we find no merit to Mullins' claim that Kimbler owes an arrearage and that the trial court erred in ordering her to make payments toward her arrearage based upon the inequity she perceives in the order.
 {¶ 43} With regard to the computation of Mullins' monthly support obligation, we note that, along with his proposed findings of fact and conclusions of law, Kimbler filed a child support computation worksheet indicating that Mullins earns $32,906 per year. Mullins filed an affidavit indicating that her gross yearly income was $20,847 in 2004. Additionally, Mullins filed tax returns indicating that she earned $6,726 in 2003 and $9,910 in 2002. Finally, Mullins filed letters from her employers indicating that her pay rate is approximately ten dollars per hour, but that she works only limited hours. Upon review of the entire record, we are unable to find any evidence that Mullins earns the $32,906 per year figure contained on the child support computation worksheet used by the court. Thus, we must remand this matter to the trial court for the purpose of calculating child support.
 {¶ 44} In sum, we find that some competent, credible evidence supports the trial court's judgment, with the exception of its support order. Moreover, we find that the trial court did not err in granting Kimbler's motion to modify custody, in ruling that long-distance visitation rules apply, and in ordering Mullins to pay child support. To the extent that we find that the court's conclusions are supported by different findings than those entered by the trial court, we nonetheless find that the record contains an evidentiary basis to support the court's decision. Accordingly, we overrule Mullins' third assignment of error, except as it relates to the calculation of her child support obligation.
 V. {¶ 45} In conclusion, we overrule Mullins' first assignment of error. We find that the issues Mullins raises in her second assignment of error are moot. Finally, we sustain Mullins' third assignment of error in part, and overrule it in part. We remand this matter to the trial court to compute Mullins' child support obligation based upon evidence of her yearly income, and affirm the trial court's judgment in all other respects.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSEREMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED for further proceedings consistent with this opinion and that Appellee and Appellant share equally in the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment only.
Abele, J.: Concurs in Judgment and Opinion.