JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Caroline Watson ("mother") appeals from the order of the juvenile court that terminated a shared parenting agreement, designated plaintiff Darius Moss ("father") sole residential and custodial parent of the minor child, awarded the mother limited visitation, and ordered mother to pay the father child support of $873.70 per month. For the reasons set forth below, we affirm that portion of the order which designates the father as the sole residential and custodial parent, but we reverse the visitation schedule and child support determinations and we remand for further proceedings consistent with this opinion.
 {¶ 2} The mother was born in Chicago, Illinois. She was admitted to law school in Cleveland. The parties' minor child was born on December 16, 2000. The parties did not live together but the father filed an acknowledgment of paternity. The parties terminated the relationship. The mother eventually took the Illinois bar exam. The father filed an application to determine custody in the juvenile court. In March 2004, the parties entered into an agreed shared parenting plan which indicated that the child would principally reside with the mother and that both parents would be designated joint residential parents.
 {¶ 3} In September 2004, the mother filed an emergency motion to modify the allocation of parental rights and responsibilities, motion for shared parenting and motion to modify child support, in which she asserted that she could not obtain employment in Cleveland and intended to accept a job in Chicago. In October 2004, the mother moved to Chicago.
 {¶ 4} In December 2004, the juvenile court entered an interim order giving each parent two week alternating visitation.
 {¶ 5} On June 14, 2005, Guardian Ad Litem ("GAL") Thomas Kozel filed a report which indicated that it was in the best interest of the child for him to be returned to Cleveland, the father to be designated the primary residential caregiver and for the mother to be given a liberal possession schedule.
 {¶ 6} The matter proceeded to trial which began on November 14, 2005. GAL Thomas Kozel testified on cross-examination by the mother that he did not believe that it was appropriate for the mother to relocate. Although the mother submitted evidence of her considerable efforts to find a job as an attorney in the Cleveland area, the GAL noted that she had a home in Cleveland and other jobs here although they were outside of the legal field. These included a job as a supervisor in the loan department of Charter One and a job in the personnel department of Cleveland City Hall, where she earned $52,600 at the time of her last promotion. The GAL believed that the mother quit the City Hall job abruptly and should have first found a new job. The GAL also testified that the mother subsequently lost the job for which she had moved to Chicago and he questioned her "ability to continue to provide."
 {¶ 7} Overall, he believed that the mother was very guarded in providing information to him, was somewhat uncooperative in providing information to the father, and had made decisions which were contrary to the best interests of the child. He further commented that the mother made statements which seemed to show a lack of insight regarding putting the child's interests above her own. The GAL noted that the father has an informal shared parenting plan with the mother of his other child and that both children have a close relationship.
 {¶ 8} The mother informed the GAL that she would move back to Cleveland if the father was awarded custody of the child but the GAL denied that his recommendation was designed to force such an outcome.
 {¶ 9} The father also testified upon cross-examination by the mother and stated that, after he terminated the relationship with the mother, it became more difficult to see the child. He admitted that the company that he works for has an office in Chicago.
 {¶ 10} The father also testified that he supported the child by direct payments to the mother. He stated that he paid for the child's daycare while the child was in Ohio, gave the mother $600 per month when she was not working and also bought formula, diapers and other items for the child. The parties had a support order obligating the father to give the mother $270 per month and to also pay the daycare bill of $560 per month. The father admitted that he does not pay the full amount of the daycare bill. He also admitted that he missed two scheduled visits with the child but he blamed inclement weather in one of these instances. The father testified that the child is doing well at his school in Chicago. Finally, he stated that there was nothing detrimental about the move to Chicago other than the impact of the move upon the child and the travel. He stated that it is very important to him that the child know that he loves him and wants to be in his life.
 {¶ 11} David Hall, the mother's fiancé, testified that he believed that it was best for the child to be with his mother. He admitted, however, that it would be possible for him to move to Ohio.
 {¶ 12} Rudene Watson, the maternal grandmother, testified that much of her family lives in the Chicago area. She and her daughter are churchgoing people and they bring the child to worship. He likes his school and has friends there. She believed that the mother should be the primary and residential caregiver but she indicated that she did not want the child to be cut off from his father. She admitted that the distance could effect the father's ability to bond with the child but she emphasized that the parties had never been married and that the father could have much contact with the child.
 {¶ 13} Fred Watson, the child's maternal grandfather, testified that the child likes school, and is doing well in Chicago but he admitted that it was important for the boy to be with his father if possible.
 {¶ 14} The mother testified that the father knew that it was always her intention to return to Chicago following law school. She did not know many people in Cleveland. It was important for both of them to raise their child together but they broke up after the child was born. She nursed the child until he was around two years-old.
 {¶ 15} The mother admitted that she had a job with Charter One then got a job working for then-Mayor Michael White. She left during the tenure of Mayor Campbell and could not find employment in Cleveland. She knew that the father could transfer to Chicago but she did not want to pressure him about moving. She rented space and attempted to start her own firm in Cleveland but was unsuccessful. She could not find work in Cleveland in the legal field.
 {¶ 16} The mother was eventually hired by a firm in Chicago and returned to that city in July 2004. She now has a different job but she stated that she earns $35 per hour plus benefits. She has also been appointed lead counsel on a federal discrimination case and has a good home.
 {¶ 17} Following the move, she continued to provide the father with visitation with the child and has at no time obstructed or denied visitation. She stated that her communication with the father could be better but she believes that the GAL is a "father's advocate" because he accepted information provided by the father and did not ask her for a response. She also strongly objected to the two-week alternating possession schedule that the GAL previously approved.
 {¶ 18} She admitted that the father gave her money while she was unemployed but she denied that he paid the day care costs.
 {¶ 19} The child's life in Chicago is enriched with books, music and activities. She opined that the school he would attend in Chicago is very good whereas the school he would attend in Cleveland is in an academic emergency.
 {¶ 20} Finally, she stated that she would return to Cleveland if the father was deemed the residential parent but it would be financially difficult for her.
 {¶ 21} Proceeding to the father's evidence, Angela Collins testified that she and the father have a three year-old daughter. They handle all of the parenting issues for that child through informal agreement. She has no difficulty communicating with the father and they are able to resolve their disagreements over the child by doing what is best for her. As to support, they agreed that the father would pay the girl's daycare tuition. They have agreed that their daughter should grow up with the four year-old boy and the children spend time together and are very attached. Collins further testified that the father is a good parent who provides healthy meals, fun activities and a clean home.
 {¶ 22} The mother admitted on cross-examination that she still owns a condominium in Shaker Heights and her brother sometimes stays there. She further testified that she was no longer needed in the administration of Mayor Campbell and was essentially forced out of that job in July 2003. She did not have another job at that time and received unemployment compensation. She was unsuccessful in finding employment in the legal field in Cleveland but she acknowledged that some of the rejection letters introduced within her exhibits were duplicates and that others were prior to her July 2003 departure from Mayor Campbell's staff. She insisted, however, that employment possibilities are better in Chicago. She also admitted that she no longer has the job which prompted her move to Chicago, but she stated that she now has a better job.
 {¶ 23} The mother admitted that the original shared parenting plan prohibited the residential parent from moving out of the county without a court order but she stated that the father did not object so long as he had the child as originally scheduled and she maintained the schedule at her own cost. She added that she considered herself the child's primary parent since she nursed him for 22 months, provided the bulk of care during his infancy and also provides for most of his needs. Finally, she stated that she is forty years-old and did not know if she would have more children.
 {¶ 24} Herbert Pleasant, the father's co-worker, testified that the father is very dedicated to the child and sincere in his desire to raise him and be a positive influence over him.
 {¶ 25} The father stated that he wanted to keep the shared parenting plan but that the move had made it impractical. He stated that it would be best for the mother to remain in Cleveland and he indicated that he could not move to Chicago due to his commitments here. He believed that he should be the residential parent. He testified that he spends quality time with the child and has investigated sending him to parochial school. He stated that he does not have good communication with the mother and he had concerns about her stability and direction. He further testified that he takes the child to the doctor and maintains him on a medical plan.
 {¶ 26} The GAL again testified and stated that he had concerns over the mother's stability and consistency. He noted that she planned to change jobs and move again in the future, and that the father is more inclusive as to decision-making, whereas the mother acted in a more unilateral fashion.
 {¶ 27} Following the trial, the court terminated the shared parenting plan, designated the father the sole residential and custodial parent and ordered the mother to pay child support. The mother now appeals and assigns five errors for our review.
 {¶ 28} The mother's first assignment of error states:
 {¶ 29} "The trial court abused its discretion by terminating the Shared Parenting Plan and ordering sole custody to the Appellee."
 {¶ 30} A trial court enjoys broad discretion in custody proceedings. Davis v. Flickinger (1997), 77 Ohio St.3d 415,1997-Ohio-260, 674 N.E.2d 1159, paragraph one of the syllabus. We will not disturb the trial court's decision regarding a motion for modification of custody unless the trial court abused that discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846. However, the record must contain sufficient factual evidence to support the court's findings regarding the change in circumstances, the child's best interests, and the determination that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. Kimbler v. Kimbler, Scioto App. No. 05CA2994,2006-Ohio-2695, citing Beekman v. Beekman (1994),96 Ohio App.3d 783, 787, 645 N.E.2d 1332.
 {¶ 31} Regarding the issue of a change in circumstances, R.C.3109.04 provides:
 {¶ 32} "(E) (1) (a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 33} "* * *
 {¶ 34} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 35} With regard to the issue of a change of circumstances, we note that courts have generally held that the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." Rohrbaugh v.Rohrbaugh (2000), 136 Ohio App.3d 599, 604-605, 737 N.E.2d 551, citing Wyss v. Wyss (1982), 3 Ohio App. 3d 412,445 N.E.2d 1153. The change must be one "of substance, not a slight or inconsequential change." Zinnecker v. Zinnecker (1999),133 Ohio App.3d 378, 383, 728 N.E.2d 38.
 {¶ 36} The act of moving a child to a different state and then resettling with a new stepparent does not, by itself, constitute a sufficient change of circumstances to warrant a change of custody. Vincenzo v. Vincenzo (1982),2 Ohio App.3d 307, 441 N.E.2d 1139. However, such a move may constitute a change of circumstances when coupled with evidence of other adverse effects, such as a disruption in ongoing relationships with extended family. Hetterich v. Hetterich (Apr. 9, 2001), Butler App, No. CA2000-06-122, citing Clontz v. Clontz (Mar. 9, 1992), Butler App. No. CA91-02-027.
 {¶ 37} Where the divorce decree expressly or impliedly prohibits the custodial parent's ability to remove the child from the jurisdiction, the burden then shifts to the custodial parent to demonstrate that the decree should be modified to permit the child's removal. Hauck v. Hauck (Mar. 31, 1983), Cuyahoga App. No. 44908. In this instance, the child can only be moved from the state upon a finding that the relocation would be in the best interests of the child. Salisbury v. Salisbury, Portage App. No. 2005-P-0010, and 2005-P-0084, 2006-Ohio-3543. R.C. 3109.04(F) lists some of the factors a court shall consider in determining the best interests of a child:
 {¶ 38} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 39} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 40} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 41} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 42} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 43} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 44} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 45} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *
 {¶ 46} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 47} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 48} In this matter, we conclude that the trial court acted within its discretion in determining that there was change in circumstances, the modification is in child's best interests, and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of evidence. The trial court also acted within its discretion insofar as it determined that it was not in the child's best interest to relocate him to Chicago. The evidence demonstrated that the child had a very good interaction with his father and half-sister, and is well-adjusted to his home and community. Although the mother was devoted and caring, her life was marked by significant changes in employment and housing, and it was clear that the future would bring more changes as her present job concludes and she and her fiancé marry. The evidence also demonstrated that the father was more inclined to honor and facilitate court-approved parenting time rights or visitation and companionship rights. Although the mother complained in trial that the father had not paid support for the child, she made no formal claims of this nature and the evidence indicated that the father made direct payments to her of an amount which she deemed satisfactory. There was also evidence that the mother's cooperation with visitation declined as her relationship with the father deteriorated, and although she denied that the move to Chicago was retaliatory and the result of not finding work in Cleveland, she had a past history of a successful career in Cleveland.
 {¶ 49} Moreover, the trial court properly concluded that the harm likely to be caused by a change of environment would be outweighed by the advantages of the change, as the evidence indicated that the father has a stable job and home, is extremely devoted to the child and is eager to be a supportive residential parent.
 {¶ 50} We find no abuse of discretion. This assignment of error is overruled.
 {¶ 51} The mother's second assignment of error states:
 {¶ 52} "The trial court abused its discretion in ordering that Appellant have very limited parenting time with the parties' minor child."
 {¶ 53} We review visitation orders for an abuse of discretion. Appleby v. Appleby (1986), 24 Ohio St.3d 39,492 N.E.2d 831.
 {¶ 54} R.C. 3109.051 pertains to the determination of visitation matters and requires that court orders that address visitation be "just and reasonable." Section (D) of this statute provides in pertinent part:
 {¶ 55} "[I]n determining other visitation matters * * * the court shall consider all of the following factors: (1) The prior interaction and interrelationships of the child with his parents, siblings, and other persons * * *; (2) The geographic location of the residence of each parent and the distance between those residences * * *; (3) The child's and the parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) The age of the child; (5) The child's adjustment to his home, school, and community; (6) If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court; (7) The health and safety of the child; (8) The amount of time that will be available for the child to spend with siblings; (9) The mental and physical health of all parties; (10) Each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights * * *; (16) Any other factor in the best interest of the child."
 {¶ 56} Moreover, where distance creates a barrier between a parent and child, the trial court needs to facilitate a relationship between said parent and child. Corple v. Corple
(1997), 123 Ohio App.3d 31, 702 N.E.2d 1234.
 {¶ 57} In this matter, the trial court awarded the mother visitation during the second full weekend of every month during the school term from Friday after school until 9:00 Sunday evening, three two-week periods of summer recess, one-half of the spring recess, one-half of the Christmas recess, and Mother's Day. We conclude that this schedule is not in the best interest of the child and is not "just and reasonable" as it does not adequately address the prior close interaction of the mother and child, the geographic locations of the parties and the child, the parents' available time, and the father's stated desire to cooperate with the mother. Moreover, this order does not adequately facilitate a relationship between the mother and child. We therefore conclude that the trial court abused its discretion by failing to fashion an order which would, as recommended by the GAL, be liberal and give the mother visitation over long weekends, in light of the significant time taken by travel.
 {¶ 58} This assignment of error is well-taken and we therefore reverse the order of the trial court insofar as it pertains to visitation and remand in order for the trial court to craft an order which is reflective of the mother's prior close interaction with the child, time needed for travel, is more liberal, and better facilitates a relationship between mother and child.
 {¶ 59} The mother's third assignment of error states;
 {¶ 60} "The trial court erred in not allowing the parties to introduce evidence of matters that took place before the parties entered into their Shared Parenting Plan adopted by the magistrate's decision on March 12, 2004 and ordered into effect by the trial court on April 9, 2004."
 {¶ 61} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St. 3d 173, 510 N.E.2d 343. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e., unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
 {¶ 62} As noted previously, the focus of the trial court's inquiry was whether there was a significant change in circumstances which would warrant modification of the April 2004 Shared Parenting Plan, whether modification was in the best interests of the child, and whether the advantages of the change outweigh any harm.
 {¶ 63} As the trial began, the mother's attorney objected to the April 2004 Shared Parenting Plan. The trial court determined that the mother had not filed any objections to the plan and had not appealed from it so it was "a done deal." The trial court then determined that the proceedings would focus upon events following April 2004.
 {¶ 64} In any event, the trial judge permitted the mother to introduce evidence that she had intended to be in Cleveland only to attend law school, that following the birth of the child, she acted as the primary parent, had primary responsibilities for him, cooperated in the father's visitation with the child, and other matters. We find no abuse of discretion as the trial court, in fact, permitted evidence as to all of the requisite elements.
 {¶ 65} The third assignment of error is without merit.
 {¶ 66} The mother's fourth assignment of error states:
 {¶ 67} "The trial court erred in determining Appellant's child support obligation."
 {¶ 68} Within this assignment of error, the mother asserts that the trial court erred insofar as it used an inflated figure to calculate the father's cost of providing health care to the child as he actually has both children on his health plan. She further complains that the court erroneously failed to deduct from the father's child care expenses those weeks when the child is with the mother or otherwise not at daycare. She also complains that the court erroneously failed to take into consideration that he "paid no child support to her directly for the first three years of their child's life."
 {¶ 69} Courts generally use the Ohio Child Support Guidelines in determining the appropriate level of child support. Kosovichv. Kosovich, Lake App. No. 2004-L-075, 2005-Ohio-4774. R.C.3119.22 provides that a court may deviate from the guideline child support calculation if it determines, based upon the factors and criteria enumerated in R.C. 3119.23, that the guideline support calculation would be "unjust or inappropriate and would not be in the best interest of the child." Factors listed within R.C. 3119.23 include "(D) Extended parenting time or extraordinary costs associated with parenting time." See, alsoDrzal v. Drzal, Columbiana App. No. 05 CO 31, 2006-Ohio-5230
(the trial court recognized that a deviation in child support was warranted and in the best interest of the child based on Appellant's increased time with the child).
 {¶ 70} We review for an abuse of discretion. Harris v.Harris, Ashtabula App. No. 2002-A-0081, 2003-Ohio-5350.
 {¶ 71} With regard to the first challenged item, there was no evidence that the cost of the father's health care premium was based on the number of children that the father has. There is no basis in the record for us to conclude that the trial court committed prejudicial error by noting the father's overall health care expense, even though both children are admittedly on the health care plan. We find no abuse of discretion.
 {¶ 72} As to the second challenged item, we agree that the trial court failed to consider the mother's extended parenting times in determining the mother's child support obligation and thus failed to deduct from the father's child care expenses those weeks when the child is with the mother or otherwise not at daycare. It also failed to consider the mother's transportation costs. This portion of the assigned error is well-taken.
 {¶ 73} As to the mother's additional complaint that the court erroneously failed to take into consideration that he "paid no child support to her directly for the first three years of their child's life," we note that the mother did not formally claim that she was owed any past due support. We find no abuse of discretion in this regard.
 {¶ 74} This assignment of error is well-taken insofar as the child support payments ordered by the trial court failed to reflect the decrease in expenses to the father and/or increase in expenses to the mother during the mother's visitation periods.
 {¶ 75} The mother's fifth assignment of error states:
 {¶ 76} "The trial court's Judgment Entry was arbitrary, based upon a misstatement of facts and against the manifest weight of the evidence."
 {¶ 77} Within this assignment of error, the mother complains that the trial court erred in reaching the following conclusions: that the mother began limiting the father's time with the child; that the mother required that some of the visitation occur in her home; that the father provided direct payments to the mother; that the GAL noted a lack of cooperation and candor on the part of the mother; that the mother left her job with the city of Cleveland without having another job.
 {¶ 78} We note that where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. "A child-custody decision that is supported by a substantial amount of competent and credible evidence will not be reversed on appeal absent an abuse of discretion." Myers v. Myers, 153 Ohio App.3d 243,2003-Ohio-3552, ¶ 43, 792 N.E.2d 770. An abuse of discretion constitutes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 79} We have thoroughly reviewed the record in this matter, and as set forth in our discussion regarding the first assignment of error, we find substantial amount of credible and competent evidence supports the trial court's judgment, and we find no abuse of discretion. Apart form the items noted with regard to visitation and child support, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably or otherwise lost its way, and we do not find the trial court's decision to be arbitrary, based upon a misstatement of facts or against the manifest weight of the evidence. The several remarks of the trial court which the mother now challenges find some support in the evidence or are an acceptable inference derived from that evidence.
 {¶ 80} This assignment of error is overruled.
Affirmed as to custody, reversed and remanded as to the visitation schedule and the child support determination.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Blackmon, J., Concur.