JOURNAL ENTRY and OPINION
{¶ 1} Appellee-mother Julie Chambers and appellant-father John Chambers were divorced in 1999. Pursuant to the most recent terms of custody, they agreed to share parenting responsibilities for their three young children, with the mother being the primary care giver. The father filed a motion to modify custody to make him the custodial parent in response to perceived custody violations by the mother. Before the court could consider the merits of that motion, the mother filed a notice of intent to relocate with the children to the state of California, and at the same time asked the court to modify the shared parenting plan accordingly. When it appeared that the mother had relocated the children without first receiving approval of the court, the father filed an emergency motion for immediate possession of the children. The court granted the emergency motion and ordered that the children remain in the father's custody pending resolution of the father's motion for custody. After a hearing, the court granted the mother's motion to relocate the children and modified custody to reflect the mother's status in California. The court maintained child support at its current levels. The father appeals, contesting the custody and support issues, as well as the court's failure to conduct an in camera inspection of certain documents in the possession of the Cuyahoga County Department of Children and Family Services (the "agency").
 I {¶ 2} The father first argues that the court erred by denying his motion to make him the custodial parent. He maintains that the mother's relocation to California, among other things, constituted a change of circumstances which warranted the modification of parental responsibilities.
 {¶ 3} The modification of parental rights and responsibilities, as applicable in this case, is governed by R.C.3109.04(E)(1)(a)(iii), which states:
 {¶ 4} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 5} "* * *
 {¶ 6} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 7} To put it plainly — modification of parental rights can occur only if (1) there was a change in circumstances since the parties filed the shared parenting plan with the court; (2) a modification was deemed to be in the best interests of the parties' children; and (3) the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the children.
 {¶ 8} The "change of circumstances" required to modify parental rights "must be a change of substance, not slight or inconsequential change." Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 1997-Ohio-260. The mother's relocation to California constituted an obvious, consequential change in circumstances. In fact, the court specifically noted that the mother's relocation made shared parenting unfeasible. Neither party appeared to disagree with this conclusion. Hence, the decision came down to whether the best interests of the children supported the decision to make the mother the custodial parent.
 {¶ 9} The dipositive issue for our purposes was the mother's relocation of the children to California. The father maintains that the clandestine nature of this relocation demonstrated her lack of fitness, and that her conduct should not have been rewarded with custody of the children.
 {¶ 10} The courts take a dim view of a parent who removes children from a jurisdiction for the sole purpose of spiting the other parent's rights to the children. See, e.g., In re Markham
(1990), 70 Ohio App.3d 841. Nevertheless, relocation to another jurisdiction is only one factor to be taken into account by the court under R.C. 3109.04. See Eichenberger v. Eichenberger
(Oct. 29, 1998), Franklin App. No. 97APF12-1599.
 {¶ 11} While the relocation of a child is just one factor to be considered in a custody modification proceeding, it is a substantial factor in any case involving shared parenting. Whenever a party agrees to shared parenting, that party does so charged with the knowledge that some life decisions have to be tempered by the agreed rights of the other parent involved. Cases of relocation out of a jurisdiction are a case in point.
 {¶ 12} Of course, the law provides that custody can be modified due to changes in circumstances. Nevertheless, the voluntary relocation of a primary caregiver parent will necessarily come at the expense of the other parent. Relocation out of state means that, as in this case, shared parenting will be impossible. Such a decision does serious violence to the terms of a separation agreement in which the parents agree to share parenting rights and responsibilities. The court must carefully and thoughtfully consider the consequences of a relocation and how it affects the previously agreed to rights of the parties.
 {¶ 13} The court noted that the relocation of the children was "clearly a factor," but said nothing of signficance about this or about the mother's failure to give adequate notice of intent to relocate as required by R.C. 3109.051(G)(1). We consider this a serious omission by the court given that the mother's relocation would necessarily terminate the custody terms of the separation agreement. We are particularly sensitive to facts showing that the father played by the rules, only to watch the mother impermissibly relocate the children, in violation of the law and his rights as a parent under the terms of the separation agreement. This forced the father to seek a court order having the children returned. In a situation like this, the court's failure to articulate a more substantial basis for granting custody to the mother gives the impression that it put a judicial imprimatur on the mother's actions.
 {¶ 14} The court may have had some rationale for discounting the mother's conduct in removing the children from the jurisdiction without first seeking permission, but it did not give it in its judgment entry. We deem this a serious omission given how close the custody decision appeared to be for the court. The court stated, "each parent's home is appropriate for the children * * *." The court found the children had a good relationship with their parents, and likewise had a good relationship with extended family members in both Ohio and California. The children were young enough that a change of schools at this point in their lives was immaterial, and the court noted that the children had adapted well to their new school in California.
 {¶ 15} The court's finding that both parents presented fine cases for custody makes us think that the mother's conduct in removing the children was so significant a factor that it could have tipped the balance in favor of the father. The court's failure to give more than lip service to this point calls its judgment into question. The absence of discussion on this point leaves the rational observer with the sense that the mother's unilateral relocation was rewarded at the father's expense. This is an untenable conclusion. The court's failure to substantiate its decision forces us to conclude that its custody decision is arbitrary and unreasonable, and therefore an abuse of discretion. We sustain this assignment of error and remand for a fuller explanation of the court's decision, taking into account the mother's conduct in unlawfully removing the children.
 II {¶ 16} Prior to trial, the father claimed that the mother told him that the agency had conducted six different investigations as a result of abuse or neglect allegations levied against her. The father said that he made only two allegations of abuse or neglect, and wished to learn the source of the other four allegations, being hopeful that information contained in those complaints might bolster his case for custody. He subpoenaed the agency's records, but the agency refused to hand them over citing confidentiality restrictions. The agency asked the court to quash the father's subpoena. The court granted the motion to quash on the basis of the agency's argument in open court. The father complains that the court erred by quashing the subpoena without first conducting an in camera review of the sought for records.
 {¶ 17} The father concedes that any information held by the agency relating to allegations of abuse or neglect is confidential pursuant to R.C. 5153.12 and R.C. 2151.421(H)(1). Those statutes collectively require the agency to prepare and keep records, and maintain the confidentiality of the information provided in the report of abuse or neglect and the name of the person making the report.
 {¶ 18} Nevertheless, the father correctly points out that the rule of confidentiality is not absolute. The court may, after conducting an in camera inspection of the records, order disclosure upon a finding that "the reports are relevant to the pending action, good cause, and that disclosure outweighs the confidentiality considerations." Swartzentruber v. OrrvilleGrace Brethren Church, 163 Ohio App.3d 96, 2005-Ohio-4264, at ¶9, citing Johnson v. Johnson (1999), 134 Ohio App.3d 579, 585. In this context, the term "good cause" means "when it is in the best interests of the child or when the due process rights of other subjects of the record are implicated." Id.
 {¶ 19} In Child Care Provider Certification Dept. v.Harris, Cuyahoga App. No. 82966, 2003-Ohio-6500, we adopted the analysis set forth in Johnson. We did not, however, resolve the issue of whether the court must conduct an in camera inspection of the sought for records before resolving the confidentiality question. Id. at ¶ 26 ("I also write separately to express my view that the three-part analysis set forth in Johnson v.Johnson (1999), 134 Ohio App.3d 579, 731 N.E.2d 1144, should be conducted, in the first instance, by the trial court in camera.") (Dyke, J., concurring).
 {¶ 20} In these circumstances, the court conducts an in camera inspection of documents by special request, and we believe that such a request requires special grounds. The father's motion for an in camera inspection of the agency's documents was based on his belief that any complaints made to the agency about the mother would have questioned her parenting ability, and thus aided his motion for custody. While the mother's parenting ability was certainly relevant to the custody question, the father gave the court no reason to believe that exigent circumstances existed which justified forcing the court to examine the records in camera. In his motion, he told the court that the mother had been:
 {¶ 21} "* * * seriously neglecting her duties as a parent in a number of areas, including: endangering the two youngest children by leaving them unattended in a motor vehicle on December 14, 2004; by instituting excessive corporal punishment; by denying the children court-ordered visitation time with their father; and by committing de facto educational neglect as demonstrated by her inability to bring the children to school in a timely fashion and permitting the children to be absent from school for reasons other than illness."
 {¶ 22} Apart from the allegation concerning excessive corporal punishment, the allegations did not concern activity that posed a direct and present threat to the safety of the children. As for the corporal punishment claim, we assume that the agency had been aware of this complaint and found no basis for it, as there was no action taken against the mother. All in all, the father's allegations appeared to be of a kind that is, sadly, all too common in custody cases. The father's request for the confidential records therefore looks like a fishing expedition for evidence that is wholly unrelated to the imminent health and welfare of the children. Under these circumstances, we cannot say that the court had an obligation to conduct an in camera inspection of the agency's records.
 III {¶ 23} Finally, the father complains that the court failed to modify his child support, despite both he and the mother submitting child support worksheets which indicated a change in child support should be forthcoming regardless which parent the court named as custodial parent.
 {¶ 24} Contrary to the father's representations, he did not file a specific motion asking the court to modify child support. He tells us that his motion for custody was "all encompassing," but we see nothing in that motion which even remotely refers to the modification of child support. That child support modification was unintended and is borne out by the father's failure to submit a child support worksheet into evidence. The father tells us that the court considered worksheets submitted by both he and the mother, but the record does not substantiate that claim. Indeed, nowhere in the father's testimony is there any evidence relating to child support. There being no motion for modification of child support before the court, we cannot find that the court erred by refusing to modify child support.
Judgment affirmed in part, reversed in part and remanded.
This cause is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
It is ordered that the parties bear their own costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., concurs.
 Calabrese, Jr., P.J., concurs in part and dissents in partwith separate opinion.
 CONCURRING AND DISSENTING OPINION