DECISION AND JUDGMENT ENTRY
{¶ 1} Jeffrey Jones appeals the trial court's decision modifying the parties' prior allocation of parental rights and responsibilities. He contends that in finding a change in circumstances occurred, the trial court improperly considered his relocation and remarriage, which arose after Jerilyn Jones filed her motion to modify. However, Mr. Jones failed to object initially when the court indicated it would explore these issues. He also presented evidence regarding the subsequent events and proceeded as if they were at issue. Therefore, he has waived the right to appeal the court's consideration of them.
 {¶ 2} Mr. Jones additionally asserts that Ms. Jones failed to set forth a sufficient change in circumstances in her motion to modify and answers to interrogatories. Even if we assume Ms. Jones failed to allege a sufficient change in circumstances in her motion and answers, the evidence presented at the hearing supports the trial court's *Page 2 
change in circumstances finding, i.e., the evidence shows that Mr. Jones relocated to Washington Courthouse, away from the children's family support system.
 {¶ 3} Next, Mr. Jones argues that the magistrate erred by overruling his motion to dismiss, which he made following Ms. Jones's presentation of evidence. Because Mr. Jones's oral motion was very general in nature and because he subsequently failed to specifically object to the magistrate's decision on this basis, he has waived the issue on appeal.
 {¶ 4} Mr. Jones also contends that the trial court's decision is against the manifest weight of the evidence and contrary to law. We do not review a trial court's parental rights and responsibilities modification decision under the manifest weight of the evidence standard. Instead, we review these judgments for an abuse of discretion, which means we defer to rational decisions. The trial court could have reasonably determined that Mr. Jones's relocation and remarriage constituted a change in circumstances. Mr. Jones's decision to relocate caused the children to be removed from the area of their parents' former marital home, where at least the older child had attended school, had engaged in extracurricular activities, and had forged friendships. The children also shared a close relationship with extended family in the area. The trial court also could have rationally concluded that the modification would serve the children's best interests by preserving stability. Mr. Jones's assertion that the trial court was required to find an adverse affect upon the children before modifying the parental rights and responsibilities is meritless, because he bases this argument upon an outdated version of the statute. *Page 3 
 {¶ 5} Nor did the trial court abuse its discretion by determining that the advantages of modification outweighed any potential harm. The modification preserves the children's stability by ensuring that they will attend school in the same general area and by maintaining their close contact with extended family.
 {¶ 6} Accordingly, we overrule all the assignments of error and affirm the trial court's judgment.
 I. FACTS {¶ 7} The parties were married and had two children. They later divorced and the court allocated parental rights to Mr. Jones and awarded Ms. Jones "Option 2" parenting time. She subsequently filed a motion to modify the "shared parenting plan" even though one did not exist. After Mr. Jones filed a motion to strike because there was no shared parenting plan, Ms. Jones filed a "Motion for a Change of Custody." She later filed another motion to modify "custody" and a proposed shared parenting plan. She alleged that a change in circumstances had occurred to warrant a modification.
 {¶ 8} Mr. Jones served interrogatories upon Ms. Jones asking her to specify the change in circumstances. She answered that the following facts constituted a change in circumstances: "[T]he children's mother is living back in the area which will provide family and support for the children. The children could avoid daycare by being with the maternal grandmother while mother works. The children are unhappy in their current circumstances. The children do not like the father's girlfriend and her two children. The children do not want to return to their father after visitation with the mother. The mother's residence is more of a home atmosphere than that of the father." *Page 4 
 {¶ 9} At a hearing before a magistrate, Ms. Jones also pointed out that Mr. Jones had subsequently relocated with the children to Washington Courthouse to live with his new wife and her two step-children. There was no objection to this testimony. The Washington Courthouse area daycare provider testified that she watched the children for a total of about five or six days since Mr. Jones's move to the area. She stated that the children seemed happy and well-adjusted with their new step-family.
 {¶ 10} Ms. Jones testified that after her divorce, she moved from the Columbus area to Winchester, Ohio. Before she and Mr. Jones divorced, they lived in Lynchburg, Peebles, and Lebanon. Her oldest child attended kindergarten at Peebles Elementary School, where he made several friends. He also played tee-ball in Peebles. She stated that he seemed happy with the school. Her mother lives across the street and cares for the children when she works.
 {¶ 11} On direct examination by Mr. Jones's counsel, Mr. Jones's new wife, Beverly Jones, testified that his children and her children interact like siblings and that they play well together. She stated that the children have adjusted well to their new home in response to questions posed by counsel concerning the marriage and Mr. Jones's relocation.
 {¶ 12} Mr. Jones testified that he moved to Washington Courthouse primarily because of the child care situation. He stated that his new wife had used the Washington Courthouse area child care provider for five years with her own children and felt very comfortable with her. He testified that his children get along well with his new wife's children and seem happy in Washington Courthouse. *Page 5 
 {¶ 13} After the parties completed presenting evidence, Mr. Jones's counsel argued that Ms. Jones failed to show any change in circumstances and she failed to show that either the relocation or remarriage has negatively affected the children. He did not mention or object to the evidence introduced concerning the remarriage and relocation.
 {¶ 14} The magistrate subsequently found that a change in circumstances had occurred, that modifying the prior allocation would serve the children's best interests, and that the advantages of the modification outweighed any harm. She recommended that the court adopt Ms. Jones's proposed shared parenting plan.
 {¶ 15} Mr. Jones objected to the magistrate's decision. He argued, in part, that the evidence does not support the magistrate's change in circumstances or best interests findings, or her finding that the advantages of the modification outweigh the potential harm. He further asserted that (1) Ms. Jones failed to allege valid grounds for modifying the parental rights and responsibilities, (2) his remarriage and relocation did not merit a modification, and (3) the magistrate improperly considered his remarriage and relocation because these facts arose after Ms. Jones filed her motion to modify.
 {¶ 16} The trial court overruled Mr. Jones's objections relating to the magistrate's modification of the parental rights and responsibilities. The court found a sufficient change in circumstances: (1) Ms. Jones moved back to the area where she was involved with her children; (2) she participated in field trips with the children and attended their sporting events; (3) she lived within minutes of Mr. Jones, and her mother lived across the street and was willing to provide child care; (4) the original decree stated that Mr. Jones would provide parenting time to Ms. Jones if he was working and *Page 6 
she was not, but the evidence indicates he would deny her this parenting time; and (5) Mr. Jones married and moved to Fayette County away from Ms. Jones and all other support from his family and claims that he moved primarily because of child care reasons.
 {¶ 17} The court found that Ms. Jones supplemented her motion with answers to interrogatories, which alleged grounds for a change in circumstances. The court additionally noted that it set the matter for a hearing on Mr. Jones's objections to the magistrate's decision, but Ms. Jones and her counsel chose not to attend.
 {¶ 18} The court further found that modifying the parental rights and responsibilities would serve the children's best interests and that the advantages of modification outweighed the potential harm. The court adopted Ms. Jones's shared parenting plan.
 II. ASSIGNMENTS OF ERROR {¶ 19} Mr. Jones assigns the following errors:
First Assignment of Error:
 The trial court abused its discretion in modifying the custody of the minor children, in that it did not frame the issues to the pleadings that were filed, the evidence failed to establish any change of circumstances to justify the change of custody. [sic]
Second Assignment of Error:
 The trial court erred in failing to dismiss the motions at the close of the plaintiff's evidence.
Third Assignment of Error:
 The trial court erred in considering the move to Fayette County, Ohio which took place 20 days before the hearing.
Fourth Assignment of Error:
 The decision of the trial court is against the manifest weight of the evidence and contrary to law. *Page 7 
 III. {¶ 20} In his first assignment of error, Mr. Jones asserts that the trial court erred by considering his relocation to Washington Courthouse and his remarriage as a change in circumstances when Ms. Jones failed to specify these events in her written motion or answers to interrogatories. He contends the trial court was limited to deciding the motion on the bases outlined in her answers to interrogatories and that it could not consider facts that arose after she filed her motion. He essentially asserts he lacked adequate notice of the grounds for the motion.
 {¶ 21} Because he also raises a similar argument in his third assignment of error, we consider it here. He argues that the trial court erred by considering his relocation as a change in circumstance when Ms. Jones did not allege his relocation as a factor in her written motion. He contends that the court could not consider facts that arose after she filed the motion.
 {¶ 22} Within his first assignment of error, Mr. Jones also asserts that the reasons Ms. Jones outlined in her answers to interrogatories were not sufficient to constitute a change in circumstances under R.C.3109.04(E). He argues the change did not involve the circumstances of the children or of the residential parent, but only involved changes in Ms. Jones's life, which under the statute, are insufficient to amount to a change in circumstances. He also argues that his relocation does not constitute a change in circumstances and that the evidence does not otherwise satisfy the statutory threshold. *Page 8 
 A. Adequate Notice of the Grounds of the Motion {¶ 23} Although Mr. Jones filed a written objection to the magistrate's decision regarding her consideration of facts that occurred after Ms. Jones filed her motion, he did not object to this evidence during the hearing. In fact, we conclude he actually invited the error. The "invited error" doctrine prohibits a party who induces error in the trial court from taking advantage of the error on appeal. State ex rel.Fowler v. Smith (1994), 68 Ohio St.3d 357, 359, 626 N.E.2d 950; Hal ArtzLincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20,502 N.E.2d 590, paragraph one of the syllabus; Woolridge v. Newman (June 8, 2000), Pike App. No. 99CA635.
 {¶ 24} It is a cardinal rule of appellate procedure that "an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected."Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210,436 N.E.2d 1001. A party waives and may not raise on appeal any error that arises during the trial court proceedings if that party fails to bring the error to the court's attention, by objection or otherwise, at a time when the trial court could avoid or correct the error. Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099; Stores RealtyCo. v. City of Cleveland Bd. of Bldg. Standards and Bldg. Appeals
(1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629. In the absence of an objection to the admission of evidence at trial, the party waives all but plain error. State v. Jones, 91 Ohio St.3d 335, 2001-Ohio-57,744 N.E.2d 1163. In the civil context, the plain error doctrine applies only when an error "seriously affects the basic fairness, integrity, or public reputation of the judicial process." Goldfuss,79 Ohio St.3d at 122-123. *Page 9 
 {¶ 25} Here, Mr. Jones never objected during the modification hearing to the evidence regarding his relocation and remarriage. He also did not object when Ms. Jones's counsel asserted at the beginning of the modification hearing that his relocation constituted an additional change in circumstances. Moreover, Mr. Jones's counsel questioned both Beverly Jones and Mr. Jones regarding the relocation and remarriage. He presented evidence regarding the children's adjustment to the remarriage and the new home. He basically proceeded as if his relocation and remarriage were at issue. Under these circumstances, Mr. Jones invited any error concerning the court's consideration of his relocation and remarriage. He cannot litigate the issue and then object to its consideration upon receiving a "bad result."
 {¶ 26} Consequently, Mr. Jones's argument that the court erred by considering facts other than those Ms. Jones specified in her motion and answers to interrogatories is meritless.
 B. Change in Circumstances {¶ 27} Next, Mr. Jones argues that the factors Ms. Jones outlined in her answers to interrogatories were not a sufficient "change in circumstances" to warrant a modification of the parties' parental rights and responsibilities. He contends that none of the factors involved a change in his (the residential parent) or the children's circumstances, but involved only changes in the non-residential parent's circumstances.
 {¶ 28} While a change in a parent's situation can sometimes impact the child's well-being, "[i]t is not sufficient for the moving party to merely show that [s]he can provide a better environment than the environment provided by the parent with custody." Wyss v. Wyss (1982),3 Ohio App.3d 412, 414, 445 N.E.2d 1153; see, also, *Page 10 In re James, 113 Ohio St.3d 420, 2007-Ohio-2335, at ¶ 15; Hinton v.Hinton, Washington App. No. 02CA54, 2003-Ohio-2785. Thus, a change in circumstances for the non-residential parent is generally irrelevant.Morgan v. Morgan, Highland App. No. 06CA15, 2006-Ohio-6615. In fact, the statute specifically limits a change of circumstances to situations involving the child, the residential parent, or either parent in a shared parenting context. See R.C. 3109.04(E) cited below in Section V(A).
 {¶ 29} We agree with Mr. Jones that the reasons Ms. Jones outlined in her answers to interrogatories regarding her relocation and improved circumstances do not, standing alone, constitute a "change in circumstances." However, she did allege facts that raised a colorable claim that the children's circumstances had changed, i.e., the father's wife made them unhappy. She also asserted that her relocation to the area of the former marital residence would provide "family and support for the children," that the children could avoid daycare because their maternal grandmother could provide child care, that the children are unhappy in their present circumstances, that the children do not want to return to their father after visits with her, and that her residence is more of a home atmosphere than his. We do not conclude these contentions are true, but find they form some basis for the trial court to believe a change of circumstances has occurred because they may have had a direct impact on the children. Moreover, as we explain in our discussion under the fourth assignment of error, additional factors exist to demonstrate a change in circumstances. Thus, this part of the first assignment of error is meritless.
 {¶ 30} Accordingly, we overrule the first assignment of error as it concerns his claim of inadequate notice and his argument that the answers to interrogatories failed to *Page 11 
set forth sufficient change in circumstances. We also overrule his third assignment of error. We consider the remainder of the first assignment of error regarding whether the facts otherwise demonstrate a change in circumstances under our discussion of the fourth assignment of error.
 IV. MANIFEST WEIGHT/ABUSE OF DISCRETION {¶ 31} In his fourth assignment of error, Mr. Jones argues that the trial court's decision modifying the prior allocation of parental rights and responsibilities is against the manifest weight of the evidence. He contends that the evidence fails to show (1) a change in circumstances, (2) that modifying the parental rights and responsibilities would serve the children's best interests, and (3) that the children's current situation adversely affects them.
 A. Standard of Review {¶ 32} Mr. Jones asserts that the trial court's decision is against the manifest weight of the evidence. However, we review the merits of a custody determination under an abuse of discretion standard. In reWest (Dec. 24, 2001), Washington App. No. 01CA8, citing Davis v.Flickinger (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, 1162, andIn re Shepard (March 19, 1999), Scioto App. No. 98CA2586. This is a more deferential standard than manifest weight of the evidence. An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, *Page 12 
not the exercise of reason but rather of passion or bias. State v.Jenkins (1984), 15 Ohio S.3d 164, 222, 473 N.E.2d 264, 313, certiorari denied (1985), 472 U.S. 1031; Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252.
 {¶ 33} We review a trial court's decision to grant a modification of a prior allocation of parental rights and responsibilities with the utmost deference. Davis, 77 Ohio St.3d at 418; Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846. When applying an abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138,566 N.E.2d 1181. Moreover, we presume that the trial court's findings are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use its observations in weighing the credibility of the proffered testimony.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Thus, deferential review in a child custody case is crucial since there may be much evident in the parties' demeanor and attitude that does not translate to the record well. Davis, 77 Ohio St.3d at 419.
 B. Standard for Modifying a Prior Decree Allocating Parental Rights and Responsibilities {¶ 34} R.C. 3109.04(E)(1)(a) governs the modification of a decree allocating parental rights and responsibilities and states:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the *Page 13 
prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
 {¶ 35} Thus, a trial court may modify an allocation of parental rights and responsibilities only if the court finds (1) that a change in circumstances has occurred since the last decree, (2) that modification is necessary to serve the best interest of the child, and (3) that the advantages of modification outweigh the potential harm. See, e.g., Beaver v. Beaver (2001),143 Ohio App.3d 1, 9, 757 N.E.2d 41.
 1. Change in Circumstances {¶ 36} A change in circumstances is a threshold requirement intended to provide some stability to the custodial status of the child. In reJames, supra; Davis, 77 Ohio St.3d at 417, citing Wyss v. Wyss (1982),3 Ohio App.3d 412, 416, 445 N.E.2d 1153. However, appellate courts "must not make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it necessary for the best interest of the child." Davis, 77 Ohio St.3d at 420-421. Thus, we are required to afford a trial court's decision regarding a change of circumstances the utmost discretion. But, a trial court is limited to the extent that a change in circumstances cannot be based on a slight or inconsequential change; it must be one of substance. Id. at 418. Courts must remain mindful that ?`[t]he clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment. The statute is an attempt to provide some stability to the custodial *Page 14 
status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'" Id., quoting Wyss, 3 Ohio App.3d at 416.
 {¶ 37} Not only must the change of circumstances be of consequence, but it also must relate to the child's welfare. Beaver,143 Ohio App.3d at 10. ?`Implicit in the definition of changed circumstances is that the change must relate to the welfare of the child.'" Id., quotingHoltzclaw v. Holtzclaw (Dec. 14, 1992), Clermont App. No. CA92-04-036.
 {¶ 38} In some instances, a residential parent's relocation, by itself may not produce a sufficient change in circumstances. Rohrbaugh v.Rohrbaugh (2000), 136 Ohio App.3d 599, 604, 737 N.E.2d 551; Hanley v.Hanley (May 22, 1998), Pickaway App. No. 97CA35 (plurality opinion);Moore v. Moore (Mar. 27, 1998), Portage App. No. 97-P-0008; Eaches v.Eaches (July 3, 1997), Logan App. No. 8-97-05. However, these cases are highly fact-specific and the outcome depends largely upon the unique facts of each case. Thus, relocation is only one factor that a court may consider. In re J.C., Cuyahoga App. No. 87028, 2006-Ohio-2893, at ¶ 10. We acknowledge that many appellate courts have held that relocating with a child and settling with a new stepparent do not, standing alone, constitute a sufficient change of circumstances to warrant a change of custody. In re D.M., Cuyahoga App. No. 87723, 2006-Ohio-6191, at ¶ 36, appeal not allowed, 113 Ohio St.3d 1468, 2007-Ohio-1722, 864 N.E.2d 654, citing Vincenzo v. Vincenzo (1982), 2 Ohio App.3d 307, 441 N.E.2d 1139. "However, such a move may constitute a change of circumstances when coupled with evidence of other adverse effects, such as a disruption in ongoing relationships with extended family." In *Page 15 re D.M., at ¶ 36, citing Hetterich v. Hetterich (Apr. 9, 2001), Butler App, No. CA2000-06-122, and Clontz v. Clontz (Mar. 9, 1992), Butler App. No. CA91-02-027.
 {¶ 39} In In re D.M., for example, the court held that the trial court did not abuse its discretion in determining that a change in circumstances occurred when the mother intended to relocate with the child from the Cleveland, Ohio, area to Chicago, Illinois.
 {¶ 40} In this case, the trial court found the following facts resulted in a change of circumstances: (1) Ms. Jones moved from Columbus to live in the area of the parties' former marital residence, where she was involved with the children; (2) she participated in the children's field trips and attended their sporting events; (3) Ms. Jones lived within minutes of Mr. Jones and her mother lived across the street from her and could provide child care; (4) Mr. Jones would deny parenting time to Ms. Jones if Ms. Jones was not working, in contravention of their agreement; (5) Mr. Jones remarried and relocated to Fayette County, away from Ms. Jones and all other support from his family.
 {¶ 41} The trial court did not abuse its discretion by determining that a change in circumstances occurred. Mr. Jones moved to Washington Courthouse to live with his new wife and her children. His move changed the children's environment and removed them from the support of their extended family, albeit somewhat minimally. However, the trial court, sitting as the trier of fact, was in the best position to evaluate the children's situation and the change that occurred as a result of these circumstances. We see nothing in the record to indicate that the trial court's decision lacked a basis in fact and reason. *Page 16 
 {¶ 42} Because Mr. Jones's relocation and remarriage constitute changes in circumstances, we need not address his concerns that changes in the nonresidential parent's circumstances do not satisfy the statute.
 2. Best Interests {¶ 43} After finding that a change of circumstances exists, the trial court next must consider whether the modification would serve the child's best interest. R.C. 3109.04(F)(1) specifies the factors that a trial court must consider when determining a child's best interest: "In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused *Page 17 
child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child; (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 44} Here, the trial court considered each of the best interests factors. The court found: (1) the parents' wishes regarding the children's care are divided; (2) the children lack sufficient ability to express their wishes; (3) the children have a normal relationship with their step-family; (4) the children spend quality time with both parents and both parents make the children a priority; (5) the children like their maternal grandmother; (6) the children are well-adjusted to their mother's home, the school, and the community; (7) the children are well-adjusted at their father's home, but living there would require a change in school district; (8) the mother lives across the street from the *Page 18 
children's maternal grandmother and a few minutes away from most of the paternal relatives; (9) Mr. Jones enrolled the older child in tee-ball in the area where Ms. Jones resides and he coached the team; (10) the child made friends with other children through his extracurricular activities; (11) all involved parties appear mentally and physically healthy; (12) both parents would honor and facilitate visitation, but the court had some concern whether Mr. Jones had granted Ms. Jones all the visitation to which she was entitled; (13) neither parent had been convicted of any criminal offense involving any act resulting in a child being an abused or neglected child; (14) neither parent continually or willfully denied the other parent's right to visitation or parenting time; (15) Mr. Jones recently moved, which would cause the children to attend a different school if they lived primarily with him, and his move took the children forty-five minutes away from his family, "with whom they appeared to be very close;" and (16) the maternal grandmother will provide child care while the children are in their mother's care, whereas while in the father's care, the children will be in a non-relative daycare provider's home.
 {¶ 45} The trial court did not abuse its discretion by determining that the above factors showed that modifying the prior allocation of parental rights and responsibilities would serve the children's best interests. Providing the children with the stable, familial environment they had grown accustomed to before moving to Washington Courthouse serves the children's best interests.
 3. Harm {¶ 46} The next step in the analysis requires the court to find that the advantages of modification outweigh the likely harm. However, Mr. Jones argues that the party *Page 19 
seeking to modify a prior allocation of parental rights and responsibilities "must show some action by the custodial parent presently endangers the child or, with a reasonable degree of certainty, will manifest itself and endanger the child in the future if the child is not removed from his or her present environment immediately," and that the court must find "that the child's present environment endangers the child and that the harm likely to be caused by a change of custody is outweighed by the advantage resulting from a change of custody." He cites Gardini v. Moyer (1991), 61 Ohio St.3d 479, 483-484,575 N.E.2d 423, and Well v. Well (1990), 70 Ohio App.3d 606, 591 N.E.2d 843, to support these propositions.
 {¶ 47} The statute construed in Gardini and Well read: "(1) * * * [T]he court shall not modify a prior custody decree unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] his custodian * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the custodian * * * designated by the prior decree, unless one of the following applies: * * * (c) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 48} The current statutory provision regarding a modification of a prior allocation of parental rights and responsibilities does not contain the same language regarding the child's present environment. It contains no requirement that the child's present environment endangers the child before a court may modify parental rights and *Page 20 
responsibilities. Instead, as the Gardini court noted, the legislature amended the statute to read: "The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." Id. at 484.
 {¶ 49} Because this argument is premised upon an outdated version of the statute, it is meritless. The statute currently contains no requirement that the trial court find a present danger to the child before modifying custody. Instead, the court need only find that the advantage of modification outweigh the potential harm.
 {¶ 50} Here, the trial court did not abuse its discretion by determining that the advantages of modification outweighed any potential harm. Under the parties' original parenting arrangement, both parents enjoyed liberal parenting time, and, under the modified arrangement, both parties continue to have liberal parenting time. Thus, there is little chance of major upheaval. The children had become acclimated to life in the area of the former marital residence and shared close relationship with extended family. The modification preserves the children's stability by ensuring that they will attend school in the same general area and by maintaining their close relationship with extended family.
 {¶ 51} Consequently, the trial court did not abuse its discretion by modifying the prior allocation of parental rights and responsibilities. Accordingly, we overrule the fourth assignment of error and the remainder of his first assignment of error that the evidence fails to demonstrate a change in circumstances.
 V. MOTION TO DISMISS {¶ 52} In his second assignment of error, Mr. Jones asserts that the magistrate erred by denying his motion to dismiss, which he made following Ms. Jones's *Page 21 
presentation of evidence. He claims that Ms. Jones presented no evidence regarding the children's best interests and no evidence showing that the children's circumstances have changed. He further argues that she failed to present evidence demonstrating that any condition in the children's environment endangered them. His oral motion to the magistrate was not nearly as specific as the argument in his brief and given its generic nature, we are reluctant to say the magistrate erred in rejecting it.
 {¶ 53} More importantly, Mr. Jones did not file a specific objection to the magistrate's decision denying his motion to dismiss. Former Civ.R. 53(E)(3)(b) required objections to "be specific and state with particularity the grounds of objection." Civ.R. 53(E)(3)(d) stated that the failure to properly object to a magistrate's finding of fact or conclusion of law results in a waiver of the right to appeal the issue.[1] Because he did not specifically object to the magistrate's decision denying his motion to dismiss, he failed to preserve the issue for appellate review. See Dunn v. Dunn, Clark App. No. 05-CA-104,2006-Ohio-4649, at ¶ 26 (failing to file specific objection results in waiver of issue on appeal); Beasley v. Beasley, Adams App. No. 06CA821,2006-Ohio-5000, at ¶ 12 (same).
 {¶ 54} Even if he had not waived this issue, we still would reject his argument. A challenge to a decision denying a Civ.R. 41(B)(2) motion to dismiss is essentially a challenge to the weight of the evidence. Civ.R. 41(B)(2) applies when a party moves to dismiss a motion to modify a prior allocation of parental rights and responsibilities. SeeLeonard v. Yenser, Mercer App. No. 10-2003-01, 2003-Ohio-4251;Holtzclaw v. Holtzclaw (Dec. 14, 1992), Clermont App. No. CA92-04-036. That rule states: *Page 22 
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, * * *, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.
 {¶ 55} Under Civ.R. 41(B)(2), the court weighs the evidence and actually determines whether the plaintiff has proven the necessary facts by the appropriate evidentiary standard. Friend v. Elsea,Inc. (Sept. 26, 2000), Pickaway App. No. 98CA29, citing L.W. Shoemaker, M.D., Inc. v. Connor (1992),81 Ohio App.3d 748, 752, 612 N.E.2d 369. Even if the plaintiff has presented a prima facie case, the trial court may still dismiss the action if it determines that the necessary quantum of proof shows that the plaintiff will not prevail.Friend; Fenley v. Athens Cty. GenealogicalChapter (May 28, 1998), Athens App. No. 97CA36, citing 3B Moore's Federal Practice (1990), Paragraph 41.13(4), at 41-177.
 {¶ 56} We will set aside a trial court's ruling on a Civ.R. 41 (B)(2) motion "only if erroneous as a matter of law or against the manifest weight of the evidence." Bank One, Dayton, N.A. v. Doughman (1988),59 Ohio App.3d 60, 63571 N.E.2d 442; see, also, Tillman v. Watson, Champaign App. No. 06CA10, 2007-Ohio-2429; D.A.N. Joint Venture III,L.P. v. Armstrong, Lake App. No. 2006-L-089, 2007-Ohio-898. We will not reverse a trial court's decision as being against the manifest weight of the evidence as long as some competent, credible evidence supports it.Shemo v. Mayfield Hts. (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018;Vogel v. Wells (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154; C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Additionally, appellate courts presume that a trial court's factual findings are correct because the trial court is best able to view the witnesses and to *Page 23 
observe their demeanor, gestures and voice inflections, and to use its observations in weighing the credibility of the proffered testimony.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Thus, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact, and in a civil context, we afford great deference to the trial court in that regard.State v. Wilson, 113 Ohio St.3d 382, 2005-Ohio-4994, ¶ 26.
 {¶ 57} Even though a manifest weight of the evidence is less deferential than abuse of discretion review, we conclude the facts we previously identified in Section IV also satisfy the trial court's responsibility here. This assignment of error is meritless.
 {¶ 58} Having rejected each of the assignments of error, we affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 24 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed. The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Domestic Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. and McFarland, J.: Concur in Judgment and Opinion.
[1] On July 1, 2006, Civ.R. 53 was amended. Because the proceedings in this case occurred before July 1, 2006, we apply the former version of Civ.R. 53. *Page 1