OPINION
{¶ 1} Defendant-Appellant, Timothy M. Barto, appeals from the judgment of the Hancock County Court of Common Pleas, Domestic Relations Division, denying his motion to transfer residential parent status, or, in the alternative, for the adoption of a shared parenting plan, and awarding attorney fees to Erin Barto. On appeal, Timothy argues that the trial court erred in denying his motion, as the evidence established the required change in circumstances to warrant a transfer of residential parent status, and that the trial court erred in awarding attorney fees, as such an award was not equitable and his motion was not frivolous. Finding that the trial court's denial of the motion was supported by sufficient evidence, but that the trial court's award of attorney fees was an abuse of discretion, we affirm in part, and reverse in part, the judgment of the trial court.
 {¶ 2} In March 2005, Erin Barto filed a complaint for divorce from Timothy Barto. At the time of the complaint, Timothy was living in Tiffin, Ohio, and Erin was residing in Findlay, Ohio. The Bartos are also the parents of two children, Caleb Michael Barto (D.O.B. 2/17/1998) ("Caleb"), and Joshua Steven Barto (D.O.B. 10/1/2002) ("Joshua") (Caleb and Joshua jointly referred to as the "children").
 {¶ 3} In May 2006, the parties proceeded to a final divorce hearing. *Page 3 
 {¶ 4} In July 2006, the trial court entered a judgment entry granting a decree of divorce. Pursuant to the judgment entry, Erin was designated as the residential parent of the children, with Timothy granted visitation rights on every other weekend.
 {¶ 5} In August 2006, Timothy filed a motion to transfer residential parent status, or, in the alternative, for the adoption of a shared parenting plan. At the time of filing this motion, Timothy had moved to Findlay, Ohio, from his previous residence in Tiffin, Ohio.
 {¶ 6} In September 2006, the trial court issued a consent judgment entry, which granted Timothy increased visitation time with the children due to his recent move to Findlay, and also modified his child support payments.
 {¶ 7} In October and December 2006, hearings were held before a magistrate on the motion to transfer residential parent status, at which the following testimony was heard.
 {¶ 8} Erin testified that the children live with her and her fiancé, Joe Diemer[1], but that Timothy has the children during the day on weekdays while she is at work and on every other weekend, pursuant to the trial court's September 2006 judgment entry; that, pursuant to her initiation, Timothy had a civil protection order ("CPO") issued against him in October 2005, effective until *Page 4 
October 2006, in which he was not permitted to have any communication with her; that Timothy is always prompt in picking up the children at her home on weekday mornings; that the children love and get along with Timothy; and, that Timothy and Mr. Diemer get along when they have contact with each other. She continued that Timothy discourages Caleb from being involved in various activities, such as soccer, because it takes away his visitation time; that Joshua should be in a child care facility instead of spending the day with Timothy because it would better facilitate his learning; that Caleb told her Timothy calls her and Mr. Diemer "assholes", and that Caleb could live with him more if he acted a certain way; and, that Joshua has come home from Timothy's house and told her and her mother that he hates them.
 {¶ 9} Erin further testified that when the children are with Timothy, their schedule becomes disorganized; that, because of Timothy's work schedule, Joshua often has to wake up early from his nap and is later tired; that it is often a struggle to get Joshua to eat properly because Timothy allows him to eat whenever he wants; and, that he allows Caleb to stay up late and watch inappropriate shows on television. Erin also stated that she has noticed several changes in the children's behavior since Timothy has been granted more visitation time, including that Caleb does not want to sit down and do his homework like he used to; that Caleb's anxiety levels have intensified, as evidenced by his increased hyperactivity; and, *Page 5 
that Joshua has regressed from the progress he had made at daycare, including chewing on his shirt and not wanting to do his ABC's.
 {¶ 10} Erin also testified that the current visitation status is in the children's best interest; that there are no advantages to having a change in residential parent status or adopting a shared parenting plan; and, that altering the current visitation status would not give the children the stability of a set routine because they currently have difficulty adjusting from one house to another, and this proposed alteration would only make that adjustment more difficult for them.
 {¶ 11} Timothy testified that he moved from Tiffin to Findlay since the divorce so that he could be closer to the children and spend more time with them; that he currently does not work in the mornings and is able to spend that time with the children; and, that, since his move, he has been more available to spend time with the children. Timothy continued that he picks up Joshua and Caleb every weekday morning around 8:30; that he takes Caleb to school, eats breakfast with him, and goes over some of his homework; that, after Caleb goes to class, he will go to the office and ask about Caleb's progress at school; and, that he returns home and spends the day with Joshua, going over his ABC's and shapes, playing with him, allowing him to play with other children in his apartment complex, feeding him lunch, and allowing him to take a nap. *Page 6 
 {¶ 12} Timothy also testified that he had no prior involvement with the children and their school because the CPO would not allow it; that Erin did not properly keep him informed of Caleb's progress at school; that, since the CPO has expired, he has been able to go into school with Caleb and check on Caleb's progress; that he has attended several parent/teacher conferences; that he learned through one of Caleb's homework check-off sheets that Erin does not often do Caleb's homework with him; and, that Caleb missed some homework assignments prior to the beginning of these new visitation rights. Timothy continued that he has never been averse to allowing the children to be involved in various activities; that he signed Caleb up to be in football at the YMCA; that he allows Caleb to go to overnights at the YMCA; and, that he wants to get Caleb signed up for baseball because he has expressed an interest in playing. Timothy also stated that he has never told Caleb and Joshua that they should hate anyone, and that Joshua has told him, his mom and dad, and his girlfriend, Ashley Schreiner, that he hates them. In conclusion, Timothy testified that a change in residential parent status would be in the best interest of the children because they would be able to spend more time with him, he would be able to help Caleb more with his homework, and the children would have a more regular schedule instead of being shifted back and forth every day without being able to properly adjust to living in one place. *Page 7 
 {¶ 13} Ashley Schreiner testified that she currently lives with Timothy; that the children love their father and get upset when he is not there; that Caleb has asked her why he cannot see his father more; that Timothy is an excellent father and is very involved with the children; that, if a change in residential parent status is ordered, she has no concern for Timothy's ability to handle the increased responsibility; that she has never heard Timothy tell the children that they are supposed to hate anyone; and, that there is sufficient space in the apartment for the children to stay.
 {¶ 14} Joe Diemer testified that the children love their mother; that they always want to be around her; that the children are the most important thing to Erin; and, that when the children come back home from staying with Timothy, it is difficult to get them back into their routine of doing homework and other activities.
 {¶ 15} In March 2007, the magistrate recommended denying the motion to transfer residential parent status or adopt a shared parenting plan, and recommended that Timothy pay Erin's attorney's fees and expenses incurred in litigating this motion. In the magistrate's decision, he issued the following findings of fact:
 4. In this case, the Defendant's Motion alleges only a change in the circumstances of the Defendant, the non-residential parent, as of the date of the filing of the motion. The motion states and testimony reveals that the Defendant filed the Motion because he *Page 8 moved to a new residence that is closer to the Plaintiff's home where the children reside. Neither the Motion nor the testimony reveal any change of circumstances of the children or the residential parent, as required by RC 3109.04 * * *. The testimony also does not reveal any unforeseeable changes in the circumstances of the children or the Plaintiff as of the date the hearing on the Motions began.
 5. As the Defendant has failed to establish that a change of circumstances had occurred for the children or the Plaintiff when he filed his Motion * * *, the Defendant's Motion to Modify should be DISMISSED.
 6. The Defendant presents considerable testimony that the schedule set forth in the Consent Judgment Entry of temporary orders is in the best interests of the children. However, since the Defendant fails to meet the change of circumstances requirement, the best interest requirement of RC 3109.04 does not become relevant.
 * * *
 8. At the time the Defendant filed his Motion to change the residential parent designation, the record in this case reveals that less than three (3) months had passed since the parties [sic] agreement was read into the record on May 23, 2006 and less than 40 days had passed since the Decree was filed. The record also reveals that at the time the Defendant filed his Motion to modify the orders in this case relating to the designation of residential parent he had no statutory basis for making said request and did not meet the minimum change of circumstances requirements of RC 3109.04. As a result, the Plaintiff was required to incur fees and litigation expenses for hearings on two (2) different days. * * *
 9. Accordingly, pursuant to RC 3105.73(B), the Defendant should be ordered to pay the Plaintiff her reasonable attorney's fees and litigation expenses associated with the litigation in this matter. A hearing should be scheduled as soon as possible * * * *Page 9 to determine the amount of the Plaintiff's reasonable attorney's fees and litigation expenses. Said award is equitable.
(March 2007 Decision, pp. 3-5).
 {¶ 16} In June 2007, Timothy filed objections to the magistrate's recommendation to deny his motion and award attorney's fees.
 {¶ 17} In July 2007, the trial court affirmed the magistrate's recommendation. In the decision, the trial court stated the following findings:
 The Magistrate found that Defendant's recent move from Tiffin, Ohio to Findlay, Ohio is not in and of itself a change of circumstances which would trigger further analysis. The relocation of a non-residential parent to another jurisdiction has been held not to be a sufficient change in circumstances. See Vincenzo v. Vincenzo (1982) 2 Ohio App.3d 307. Further this Court finds that while the Defendant has moved from Tiffin, Ohio to Findlay, Ohio * * *, that fact alone is insufficient to trigger a best interest analysis. * * * Therefore, the Court finds that the Magistrate's recommendation that no change in circumstances has occurred is affirmed.
 In the alternative * * *, the Court finds that based upon its independent review of the entire record, a modification of the parties current arrangement would be inappropriate at this time and not serve the best interests of the children.
 * * *
 Finally, the Court finds that the Magistrate's recommendation that the Plaintiff be awarded attorney's fees and litigation expenses in defense of this Motion is also supported by the evidence and the law. An independent review of the evidence establishes that there has been no substantial change in circumstances since the time the parties' divorce decree was filed. * * * In this Court's view, the issues raised by the Defendant supporting his Motion could be characterized as *Page 10 frivolous, supporting a decision to award attorney's fees and litigation expenses to the Plaintiff. * * * However, the Court directs the Magistrate to fully consider the elements as set forth in RC 3105.73(B) in assessing attorney's fees, in particular, a comparison of the parties' income to ensure that any award is fair, just and reasonable.
(July 2007 Decision, pp. 2-4).
 {¶ 18} Following the trial court's decision to uphold the magistrate's recommendations, the magistrate issued a supplemental decision, finding that, because of the lack of support for his motion and the relevant incomes of both parties, it was equitable for Timothy to pay attorney's fees and litigation expenses pursuant to RC 3105.73(B). The magistrate further stated that a hearing should be scheduled to determine the amount of Erin's reasonable attorney's fees and litigation expenses.
 {¶ 19} In September 2007, the magistrate held a hearing to determine the reasonable amount of attorney's fees and litigation expenses to be awarded to Erin. Testimony was presented at the hearing demonstrating that the hourly billing rate and total billable hours were reasonable, and that the total bill for the defense of Timothy's motion was $4,004.50. However, no testimony was presented as to whether Erin actually paid or would be responsible for paying this total bill.
 {¶ 20} In December 2007, the magistrate filed his decision on the amount of attorney's fees to be awarded, recommending that, pursuant to R.C. 3105.73, *Page 11 
Timothy should pay Erin $3,962.00; finding that this amount is a reasonable fee; and, finding that such an award is equitable under the circumstances.
 {¶ 21} In January 2008, Timothy filed objections to the magistrate's recommendation of awarding attorney's fees.
 {¶ 22} In February 2008, the trial court upheld the magistrate's recommendation of attorney's fees, finding that Timothy filed a frivolous motion warranting such fees, and that the fees were reasonable.
 {¶ 23} It is from this judgment that Timothy appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO CONSIDER THE CHILDRENS' [SIC] BEST INTEREST AND IMPLEMENTING [SIC] A SHARED PARENTING PLAN AFTER APPELLANT ESTABLISHED CHANGES IN CIRCUMSTANCES RELATED TO THE MINOR CHILDREN AND THE APPELLEE.
 Assignment of Error No. II THE TRIAL COURT ERRED AS A MATTER OF LAW IN ORDERING THE APPELLANT TO PAY APPELLEE'S ATTORNEY'S FEES FOR THERE DID NOT EXIST ANY FACTUAL BASIS UPON WHICH THE TRIAL COURT COULD HAVE FOUND SUCH AN AWARD TO BE EQUITABLE. *Page 12 
 Assignment of Error No. I {¶ 24} In his first assignment of error, Timothy argues that the trial court erred in denying his motion for change in residential parent status, or, in the alternative, for the adoption of a shared parenting plan. Specifically, he contends that the evidence established the required change in circumstances needed to grant the motion, and that the trial court did not properly consider that granting the motion would be in the children's best interest, pursuant to R.C. 3109.04(E)(1)(a). We disagree.
 {¶ 25} In reviewing an award of child custody, the appellate court must afford the utmost deference to the decision of the trial court.In re Tolbert v. McDonald, 3d Dist. No. 1-05-47, 2006-Ohio-2377, ¶ 22, citing Miller v. Miller (1988), 37 Ohio St.3d 71, 74. "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v. Bechtol (1990),49 Ohio St.3d 21, syllabus. Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.Masters v. Masters, 69 Ohio St.3d 83, 85, 1994-Ohio-483. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion *Page 13 
standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 26} R.C. 3109.04(E)(1)(a) governs whether a court can modify parental rights and responsibilities for the care of a child. The statute provides, in pertinent part:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.
 {¶ 27} In deciding whether to modify a decree allocating parental rights, R.C. 3109.04(E)(1)(a) provides a two part test. First, the trial court must determine whether a change of circumstances has occurred for the child, the child's residential parent, or either of the parents in a shared parenting decree based on facts that have arisen since the prior decree or facts unknown to the court at the time of the prior decree. If the court finds a change in circumstances, it must then determine whether such a modification would be necessary to serve the best interest of the child. Lawrence v. Lawrence, 3d Dist. No. 1-2000-74, 2001-Ohio-2190.
 {¶ 28} The change in circumstances requirement is a purposeful one, as "[t]he clear intent of the statute is to spare children from a constant tug of war *Page 14 
between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment." Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, quoting Wyss v. Wyss (1982), 3 Ohio App.3d 412, 416. A change of circumstances must be a "change of substance, not a slight or inconsequential change." Davis, 77 Ohio St.3d at 418. Generally, a change of residence of the non-residential parent is irrelevant and insufficient to meet the change in circumstances requirement. Morgan v.Morgan, 4th Dist. No. 06CA15, 2006-Ohio-6615, fn. 6; Jones v.Jones, 4th Dist. No. 06CA25, 2007-Ohio-4255, ¶ 29.
 {¶ 29} In this case, Timothy requested a modification of parental rights through his motion for a transfer of residential parent, or, in the alternative, for the adoption of a shared parenting plan. The trial court upheld the magistrate's recommendation to deny Timothy's motion because of his failure to demonstrate an appropriate change in circumstances under R.C. 3109.04(E)(1)(a). Timothy contends that the trial court erred in adopting the magistrate's recommendation because he demonstrated a change in circumstances for the children, as he was now spending more time with them after his move from Tiffin to Findlay, and because the trial court did not properly consider whether the modification would be in the children's best interests. *Page 15 
 {¶ 30} The record reveals that the trial court did not abuse its discretion in finding that the evidence did not demonstrate a change in circumstances. Timothy did present evidence that his move to Findlay has changed the amount of time he spends with his children as compared to the time he spent with them while he lived in Tiffin. Under the original divorce decree, Timothy only had visitation rights with the children on every other weekend, but since his move and the court's September 2006 consent judgment entry, Timothy now has visitation rights with the children throughout the week, including taking Caleb to school and helping him with his homework every weekday morning, and taking care of Joshua throughout the day while Erin is at work.
 {¶ 31} Although this may technically be a change of circumstances for the children, it does not meet the high threshold imposed by R.C. 3109.04(E)(1)(a) and the Supreme Court's decision in Davis, 77 Ohio St.3d 415. Additionally, a change in the residence of the non-residential parent has little impact upon the change in circumstances requirement. Jones, 2007-Ohio-4255, at ¶ 29. Furthermore, because a change of circumstances was not shown, there was no need for the magistrate to proceed to the second step of the analysis under the statute to determine whether granting this motion was in the best interests of the children. *Page 16 
 {¶ 32} Because we find that Timothy was not able to sufficiently demonstrate a change in circumstances under R.C. 3109.04(E)(1)(a), the trial court did not abuse its discretion in adopting the magistrate's recommendation to deny the motion.
 {¶ 33} Accordingly, Timothy's first assignment of error is overruled.
 Assignment of Error No. II {¶ 34} In his second assignment of error, Timothy argues that the trial court erred in ordering him to pay Erin's attorney's fees incurred in the defense of his motion. Specifically, Timothy contends that no basis exists to award the fees, as his motion had substantial merit and was filed in good faith, the award was not equitable under R.C. 3105.73(B), and no motion was ever made for attorney's fees, thereby denying him proper notice that attorney's fees could be assessed against him. We agree.
 {¶ 35} An award of attorney's fees is generally within the sound discretion of the trial court and not to be overturned absent an abuse of discretion. Kaufman v. Kaufman, 3d Dist. No. 2-05-24, 2006-Ohio-603, ¶ 30, citing Babka v. Babka (1992), 83 Ohio App.3d 428, 435. Abuse of discretion is more than mere error, but signifies that the trial court's decision is unreasonable, unconscionable, or arbitrary. Blakemore,5 Ohio St.3d at 219. The appellate court must not substitute *Page 17 
its judgment for that of the trial court when reviewing under an abuse of discretion standard. Id.
 {¶ 36} Absent a statute to the contrary, bad faith on behalf of a party, or a contractual obligation, the general rule is that each party is to bear his own attorney's fees. Am. Premiere Underwriters v.Marathon Ashland Pipeline, 3d Dist. No. 10-03-12, 2004-Ohio-2222, ¶ 23, citing Sorin v. Bd. of Edn. of Warrensville Heights School Dist. (1976),46 Ohio St.2d 177, 179; McConnell v. Hunt Sports Ent. (1999),132 Ohio App.3d 657. Furthermore, awarding attorney's fees to the prevailing party is generally disfavored. See Weaver v. Caldwell Tanks (C.A.6, 2006), 190 Fed. Appx. 404, 415.
 {¶ 37} R.C. 3105.73 governs the awarding of attorney's fees in domestic relations cases. The statute states, in pertinent part:
 In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.
R.C. 3105.73(B)
 {¶ 38} In this case, the magistrate recommended awarding attorney's fees sua sponte, without a motion from Erin. The primary basis of the magistrate's *Page 18 
recommendation was that Timothy's motion was frivolously made. Furthermore, in adopting the magistrate's recommendation, the trial court found that Timothy "clearly misused the legal process," and the amount of attorney's fees awarded was reasonable.
 {¶ 39} Although Timothy did not have sufficient evidence to demonstrate a change in circumstances to warrant a change in residential parent status or adoption of a shared parenting plan under R.C. 3109.04(E)(1)(a), we find this lack of evidence does not rise to the level of making his claim frivolous. Timothy was able to prove that some changes in the circumstances of the children had occurred, as he moved and was able to spend significantly more time with the children. However, he did not prevail because he was not able to prove the level of change needed in order to warrant a change in residential parent status or the adoption of a shared parenting plan. Just because the evidence Timothy presented did not rise to the level needed for him to prevail does not thereby make his claim frivolous.
 {¶ 40} Not only was there an abuse of discretion in finding Timothy's claim to be frivolous, but the magistrate recommended an award of attorney's fees without a motion requesting such. While R.C. 3105.73(B) may permit a trial court to award attorney's fees sua sponte, in light of the general premise that attorney's fees and expenses are to be borne by each respective party in litigation, we find that an award of fees was not proper in this case because no request for fees was *Page 19 
made to the court. Furthermore, no evidence was ever presented that Erin actually paid, or had even been billed for, the attorney's fees presented at the September 2007 hearing.
 {¶ 41} Because we find that the trial court abused its discretion in upholding the magistrate's recommendation of attorney's fees, the trial court's judgment must be reversed on this matter.
 {¶ 42} Accordingly, we sustain Timothy's second assignment of error.
 {¶ 43} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued in his first assignment of error, but having found error prejudicial to the appellant herein, in the particulars assigned and argued in his second assignment of error, we affirm in part, reverse in part, and remand the cause to the trial court for further proceedings consistent with this opinion.
Judgment affirmed in part; reversed in part and cause remanded.
 SHAW, P.J., and WILLAMOWSKI, J., concurs in Assignment of Error I andconcurs in judgment only as to Assignment of Error No. II.
[1] During the course of the proceedings, Erin married her fiancé, Joe Diemer. *Page 1