[Cite as *Garrett v. Ewing*, 2018-Ohio-3716.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

LETITIA N. GARRETT,

    PLAINTIFF-APPELLANT,          CASE NO. 17-18-03

    v.

JESS E. EWING,                   O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Shelby County Common Pleas Court
Juvenile Division
Trial Court No. 2011 SUP 0091

**Judgment Affirmed**

Date of Decision:   September 17, 2018

APPEARANCES:

    *Jeremy M. Tomb* **for Appellant**

    *Jay M. Lopez* **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-appellant, Letitia Garrett ("Garrett"), brings this appeal from the March 6, 2018, judgment of the Shelby County Common Pleas Court, Juvenile Division, terminating the shared parenting plan between her and defendant-appellee, Jess Ewing ("Ewing"), and awarding custody of the parties' two children to Ewing. On appeal, Garrett argues that the trial court erred by finding Garrett in contempt for denying Ewing parenting time with the children, that the trial court erred in finding that it was in the children's best interest that Ewing be named sole residential parent and legal custodian of the children, and that the trial court abused its discretion when it excluded some statements made by one child to a mental health professional.

*Relevant Facts and Procedural History*

{¶2} The parties in this case were never married, but they were together for approximately 10 years. They had two children together: S.E. born in July of 2003 and H.E. born in August of 2009. Following the parties' separation, there was a substantial amount of litigation related to custody of the children, beginning on December 13, 2011, when Garrett filed a complaint seeking to be named residential parent and legal custodian of the children. However, that initial issue was resolved on April 20, 2012, when the parties voluntarily entered into a shared parenting plan ("SPP"), agreeing to share parental rights and responsibilities of the children.

{¶3} Then, on January 29, 2014, Garrett filed a motion for reallocation of parental rights and responsibilities. Ewing subsequently filed a motion to modify the SPP. Both parties filed contempt motions, Ewing arguing that Garrett had improperly denied him visitation with the children and claiming that Garrett had improperly used the child tax exemption against court orders.

{¶4} A guardian ad litem ("GAL") was appointed for the children and she filed a report on April 18, 2014. The GAL's report indicated that Garrett stopped sending the children for Ewing's parenting time after an incident wherein S.E. received a burn on his "bottom" from Ewing's motorcycle. The GAL recommended that Ewing receive makeup time for the time he lost with his children, and then concluded that the SPP should continue.

{¶5} A hearing was held before a magistrate on the pending issues May 13, 2014.[1] On June 13, 2014, the magistrate rendered a decision keeping the SPP in place, with minor alterations regarding the schedule. The magistrate's decision did find Ewing in contempt for her refusal to send the children for Ewing's parenting time and for using the tax exemption in violation of the SPP. No objections were filed to the magistrate's decision, and it was adopted as the order of the trial court on July 17, 2014.

---

[1] There is no transcript of this hearing in the record.

{¶6} The next major action in this case began on April 2, 2015, when Garrett filed an ex parte motion to suspend Ewing's parenting time. She later also sought the reallocation of parental rights and responsibilities.

{¶7} On May 4, 2015, Ewing filed a motion to terminate the SPP, seeking to be named as residential parent and legal custodian of the children.

{¶8} On May 7, 2015, Ewing filed a contempt motion against Garrett for her refusal to send the children for his parenting time.

{¶9} A GAL was again appointed for the children, and on August 17, 2015, the GAL filed her report. The GAL recommended that the SPP should be continued and that the parties and H.E. should be in counseling.

{¶10} The pending matter proceeded to a final hearing before a magistrate on August 28, 2015. Just prior to the hearing, H.E. was interviewed *in camera*. The evidence, as summarized by the magistrate, indicated that H.E. had been diagnosed with a number of bladder infections, yeast infections, and UTIs. Garrett attributed these infections to some failing on Ewing's part, and accused him of sexual abuse of H.E. This was the basis for her ex parte motion against Ewing.

{¶11} The matter was investigated by the police and children's services and the allegations were determined to be unsubstantiated. However, it was clear that H.E. did have a number of UTIs and yeast infections. As a result, H.E. was provided with certain medications and creams that had to be applied to her private areas.

{¶12} Garrett took H.E. to the doctor often, and when the children were in Ewing's care, she called the police 4-5 times to do "well checks" on the children despite no discernible reason to do so. No charges were ever filed against Ewing as a result of Garrett's calls. The magistrate then made the following analytical summary of the evidence presented.

> **Although Mother asserts that all of her conduct since the prior orders of the Court have been in good faith and in the best interest of the children, a summary of the evidence is that: 1) she made 4-5 unjustified "Well-Checks" upon father, 2) that she engaged in approximately 8 medical visits for [H.E.]'s vaginal infections (including 2 pelvic exams) without involving or consulting Father other than as noted, 3) that despite the unsubstantiated findings of medical examinations, Children's Services or the Sheriff's Office she persists in her belief that sexual abuse has occurred knowing full well that Father had, in fact, been required to make physical contact with [H.E.]'s private areas for needed treatment, 4) that she knew or should have known full well the limitations of the information upon which the Counselor relied when advising her that sexual abuse occurred,[2] and 5) that regardless of the best interest of [S.E.] and [H.E.] she continues to advocate that it would be her preference if neither of them were required to ever visit with their Father. She expresses no interest in family counseling that may have a better chance of dealing with the perceived issues. When looking at the totality of the evidence it is clear that Mother has construed each problem she has experienced to be one arising from an abusive or neglectful parenting of the Father. Her behavior has not been in the best interests of the children.**

---

[2] H.E.'s counselor was not told about the creams that had to be applied to H.E. as a result of her medical issues and thus when she asked H.E. about being touched by Ewing in her private areas the counselor concluded sexual abuse was occurring.

(Doc. No. 234). Despite this analysis, the magistrate did not recommend awarding custody to Ewing at that time. Rather, the magistrate modified the SPP to a week-on, week-off schedule.

{¶13} The magistrate amended its decision to address additional issues. Afterward, Garrett objected to the magistrate's decision. On February 8, 2016, the trial court overruled those objections after conducting an independent review, and then adopted the recommendations of the magistrate.

{¶14} The current litigation began on February 3, 2017, when Garrett filed, *inter alia*, a motion to terminate the SPP.

{¶15} On March 22, 2017, Ewing also filed a motion to terminate the SPP, and a motion for contempt, seeking to have Garrett found in contempt for refusing to send the children for his parenting time and for Garrett's failure to send H.E. to school.

{¶16} On April 21, 2017, a GAL was appointed—a different GAL than had worked on the case previously.

{¶17} On June 20, 2017, the GAL filed a report, summarizing the history of parenting between the parties as "one of allegations of abuse, numerous requests for well child checks and denial of parenting time. The allegations of abuse concern [H.E.] * * *[.] The claims of abuse have been investigated and determined to be unfounded." (Doc. No. 322).

{¶18} The GAL indicated that Garrett had requested an "outrageous number of [well] child checks [to the point that] [t]he children have come to think this [i]s normal." (*Id.*) The GAL indicated that this case "in no way contains the ingredients for shared parenting. Communication is abysmal and mother wants to totally eliminate father's parenting time with the daughter based upon no credible evidence nor wishes of the child. There aren't even any alternative facts in support of mother's position." (*Id.*)

{¶19} The GAL addressed all of the R.C. 3109.04(F)(1) best interest factors individually, then concluded that the SPP should be terminated and Ewing should be designated as residential parent of the children.

{¶20} The matter proceeded to a final hearing before a magistrate on June 29, 2017. At the hearing, the GAL testified, as did Garrett and Ewing. In addition, Ewing's long-term girlfriend—who was the mother of another of his children—testified, along with H.E.'s therapist. Further, an *in camera* interview of H.E. was conducted.

{¶21} On September 22, 2017, the magistrate filed its decision on the matter. The magistrate made a number of factual findings including that Ewing had missed a month of parenting time based on his testimony of the same. The magistrate noted that Garrett claimed that H.E.'s repeated UTIs were as a result of Ewing giving her Capri Sun to drink at his house. The magistrate did not find Garrett's claims that

H.E. missed so many school days because of illnesses credible, when H.E. had missed 15 days of school by early January and only a couple of them were excused.[3] Only one day was missed during Ewing's parenting time.

**{¶22}** The magistrate also found that Garrett had called the police on Ewing approximately 10 times for "well child" checks over the prior year and Ewing was never charged and nothing was done.

**{¶23}** After reviewing all of the evidence the magistrate found that a change in circumstances had occurred. The magistrate found that the lack of communication, the failure to attend appropriate counseling, and the involvement of children's services and the police in this case was "over the top." Combining this with the parties' wishes to terminate the SPP, the magistrate found a change in circumstances. The magistrate then analyzed and addressed all of the best interest factors in R.C. 3109.04(F) and found that Ewing should be awarded custody of the children. In addition, Garrett was found in contempt for her failure to send the children for Ewing's parenting time.

**{¶24}** On October 6, 2017, Garrett filed objections to the magistrate's decision. She took issue with a number of the magistrate's factual findings, argued that the magistrate's ultimate conclusion was not supported, and claimed that the

---

[3] There was testimony that H.E. missed as many as 30 days the year prior.

-8-

magistrate erred by excluding some testimony from H.E.'s counselor. Garrett later supplemented the objections and Ewing filed a response.

{¶25} On March 6, 2018, the trial court conducted an independent review of the matter and overruled Garrett's objections. The trial court then adopted the magistrate's recommendation to terminate the SPP and designate Ewing as residential parent and legal custodian of the children, reasoning, in part, as follows.

> **[T]he court finds little or no evidence of cooperation on any meaningful level and that it is having a negative effect on the children. The approach to counseling, medical care, complaints to Children Services, and police involvement have not been appropriate. Both parties generally acknowledge the problems and are each steadfast in their support for the termination of the plan for their own reasons.**

(Doc. No. 345). The trial court addressed all of the relevant factors of R.C. 3109.04(F) related to best interest, and then designated Ewing as residential parent and legal custodian of the children. It is from this judgment that Garrett appeals, asserting the following assignments of error for our review.

**Assignment of Error 1**
**The trial court's finding that Mother is in contempt regarding Father's parenting time was not supported by sufficient credible evidence.**

**Assignment of Error 2**
**The trial court's decision that it was in the minor children's best interest that Father be named sole legal custodian and residential parent was against the manifest weight of the evidence.**

**Assignment of Error 3**
**The trial court abused its discretion when it excluded statements**
**made by the child to medical and mental health professionals.**

*First Assignment of Error*

**{¶26}** In Garrett's first assignment of error, she argues that the trial court erred in finding her in contempt for failure to send the children for Ewing's parenting time. Specifically, she contends that Ewing's testimony was not sufficient to satisfy the clear and convincing burden of proof required.

Standard of Review

**{¶27}** A finding of contempt must be based on clear and convincing evidence. *Pugh v. Pugh*, 15 Ohio St.3d 136, 139 (1984). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), at paragraph 3 of syllabus.

Analysis

**{¶28}** In this case, Garrett argues that the trial court erred by finding her in contempt for failure to provide Ewing his parenting time. She claims that the record was not clear on how much time Ewing missed. Garrett argues that Ewing's

testimony that he missed "roughly around thirty" days of visitation, or perhaps a little less, was not sufficient to establish the burden of proof. (Tr. at 209).

{¶29} Contrary to Garrett's testimony, Ewing repeatedly testified that he had been denied parenting time, up to as much as a month, and that Garrett had let him make up a week of that time. The GAL also found that Garrett had been denied parenting time and recommended that he be permitted to make it up.

{¶30} Moreover, and perhaps most importantly, Garrett *actually admitted* that Ewing had missed some parenting days. She indicated that he had made up the "week" that he had missed but there were some week days perhaps unaccounted for. (Tr. at 82). Thus the only testimony in the record seems to support the conclusion that Ewing had not received all his parenting time and that Garrett was willfully preventing him from doing so.

{¶31} The trial court was certainly free to believe the testimony of Ewing that the time he missed was as much as a month, but even if the trial court thought the total amount was less, it does not change the fact that Garrett refused Ewing at least *some* parenting time in contravention of the court's order even according to her own testimony. For these reasons Garrett's first assignment of error is overruled.

*Second Assignment of Error*

{¶32} In Garrett's second assignment of error, she argues that the trial court erred in finding that it was in the children's best interest for Ewing to be named sole legal custodian and residential parent of the parties' children.

Standard of Review

{¶33} " 'Decisions concerning child custody matters rest within the sound discretion of the trial court.' " *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Walker v. Walker,* 3d Dist. Marion No. 9–12–15, 2013–Ohio–1496, ¶ 46, citing *Wallace v. Willoughby,* 3d Dist. Shelby No. 17–10–15, 2011–Ohio–3008, ¶ 22 and *Miller v. Miller,* 37 Ohio St.3d 71, 74 (1988). "Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody." *Walker*, citing *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Masters v. Masters,* 69 Ohio St.3d 83, 85 (1994). An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

Relevant Statutory Authority

{¶34} Revised Code 3109.04(F)(1) governs the determination of best interests related to a custody modification. It reads as follows.

> **(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a**

**decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:**

**(a) The wishes of the child's parents regarding the child's care;**

**(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**

**(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

**(d) The child's adjustment to the child's home, school, and community;**

**(e) The mental and physical health of all persons involved in the situation;**

**(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised**

**Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;**

**(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

Analysis

{¶35} In this case, the magistrate analyzed and addressed each of the best interest factors individually, where applicable. Garrett objected to the magistrate's decision, and her objections were overruled. The trial court then also individually addressed and analyzed each of the best interest factors. We will conduct a review of the trial court's findings in its entry regarding each of the best interest factors in R.C. 3109.04(F)(1).

{¶36} With regard to the wishes of the children's parents for the children's care in factor (a), both parents wanted full custody of the children. However, Garrett wanted Ewing's contact with the children limited, and also wanted the exchanges to

-14-

occur at the Sheriff's Office. The trial court determined that Garrett's insistence on limitations she wanted placed on visitation were not credibly supported, indicated that Ewing's wishes were better received by the trial court.

{¶37} With regard to the wishes of the children under factor (b), the trial court conducted an interview of H.E. in chambers, but not S.E. (as it was not requested). The trial court also reviewed the report of the GAL and the GAL's testimony. Notably, the children did not have a problem with either parent. Nevertheless, both children indicated that they favored Ewing. The GAL also recommended that Ewing be granted custody.

{¶38} With regard to factor (c) and the children's interrelationship with parents, siblings and others, Ewing has a live-in paramour and he has a child with her. Ewing's paramour testified that she had a great relationship with S.E., and that her daughter and S.E. were very close. The trial court found that there were more healthy relationships in Ewing's household.

{¶39} With regard to factor (d), and the adjustment to school, home and community, the trial court noted that H.E. had missed a number of school days while with Garrett, including 12 unexcused absences in the last school year, only one of which was on Ewing's parenting time. The trial court found that Ewing's living arrangements for the children were more appropriate than Garrett's.

{¶40} With regard to factor (e), and the mental and physical health of all involved, the court was concerned with Garrett's behavior, particularly in calling the police on up to 10 occasions for "well checks" on the children. The trial court also noted that Garrett failed to utilize the court-ordered counselor or the Family Wizard to facilitate better communication. In addition, the court was concerned with Garrett electing to engage H.E. in counseling without involving Ewing in any meaningful manner. The trial court determined that excluding Ewing from the counseling process was not in H.E.'s best interest.

{¶41} The trial court noted no issues with Ewing's health; however, the trial court did note there were concerns regarding H.E., as she saw a psychiatrist by video. The psychiatrist prescribed H.E. Celexa for anxiety. Ewing did not feel it was appropriate and wanted a second opinion due to H.E.'s young age. H.E.'s counselor indicated that H.E. had adjustment disorder and anxiety.

{¶42} The trial court indicated H.E. did have recurring UTIs, but stated that there was no indication that either parent was failing to adequately care for her.

{¶43} With regard to factors (f) and (i), concerning which parent was more likely to honor and facilitate parenting time, and whether either parent had willfully denied the other parenting time, the trial court determined that Ewing was more likely to facilitate parenting time. This was based, in part, on the contempt findings

of Garrett for failing to abide by the court's orders, denying Ewing his parenting time.

**{¶44}** The trial court found that factors (g), (h), and (j) were not applicable.

**{¶45}** After weighing all the factors, the trial court determined that Ewing should be named sole legal custodian and residential parent of the children.

**{¶46}** Garrett contests the trial court's finding on appeal, focusing in particular on factor (e), the mental and physical health of all involved. Garrett argues that the trial court's determinations were unfounded, and that the factor actually weighed in her favor. Garrett also argues that the evidence indicated that the children had a good relationship with her and were adjusted in her home. Garrett contends that both parents wanted to be named residential parent, thus factor (a) should not have weighed in Ewing's favor.

**{¶47}** The Supreme Court of Ohio has noted that "custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence * * * and such a decision must not be reversed absent an abuse of discretion." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260. Under this standard, we provide substantial deference to the trial court's determination, as the trial court is in the best position to evaluate custody matters.

{¶48} Here, the GAL carefully weighed the relevant factors and determined that Ewing should be granted custody of the children, recommending as much to the magistrate. The magistrate then looked into the matter after a full hearing, and after interviewing H.E. *in camera*, and recommended that Ewing be named residential parent and legal custodian. Then, after Garrett filed objections, the trial court conducted an independent review and found that Ewing should be granted custody of the children. All those closely involved who have looked at this case have recommended that Ewing be granted custody.

{¶49} To counter this, Garrett focuses on specific factual findings made by the trial court, indicating that there was evidence weighing in her favor that was not discussed or mentioned by the trial court. However, the trial court noted at the beginning of its judgment entry that the omission of the trial court to make note of specific facts did not mean the court failed to consider such facts.

{¶50} Essentially, Garrett seeks to have this court reweigh the testimony, discounting all testimony in Ewing's favor, including the GAL's recommendation and the children's wishes, and overturn the trial court's judgment. We cannot agree with Garrett. The trial court analyzed each and every factor and determined that Ewing should be named residential parent and legal custodian. The trial court illustrated a number of issues with Garrett that were all supported by the record. Garrett may have argued that she had valid reasons for what she did, or that Ewing

was worse in certain areas by comparison, but the trial court did not agree and we cannot find that, on balance, the trial court abused its discretion.

**{¶51}** Therefore, Garrett's arguments are not well-taken, and her second assignment of error is overruled.

*Third Assignment of Error*

**{¶52}** In Garrett's third assignment of error, she argues that the trial court abused its discretion by excluding statements made by H.E. to medical and mental health professionals. Garrett argues that such statements should have been admissible under Evid.R. 803(4), which concerns statements for purposes of medical diagnosis or treatment.

Standard of Review

**{¶53}** "[A] trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion * * * an appellate court should not disturb the decision of the trial court." *State v. Issa*, 93 Ohio St.3d 49,64 (2001).

Analysis

**{¶54}** In this case, Garret argues that the trial court erred by excluding testimony of statements H.E. made to her counselor. Specifically, Garrett contends that H.E.'s counselor should have been permitted to testify that H.E. had made certain statements to her for the purposes of medical diagnosis.

**{¶55}** At the outset, we note it is not clear what H.E.'s counselor's testimony would have been and how it would have had an impact on the final hearing. For this reason alone we could overrule the assignment of error.

**{¶56}** Nevertheless, if Garrett is referring to the "inappropriate touching" allegations she made against Ewing, these issues had been discussed with the trial court in the past and it was clear that no one found such allegations credible, with the possible exception of the counselor, who did not receive complete information.

**{¶57}** Moreover, the counselor's *diagnosis* of H.E.—that H.E. had an adjustment disorder and anxiety—*was* allowed into evidence. Furthermore, H.E. was interviewed *in camera* and indicated that she was not scared of Ewing. Thus we fail to see how any prejudicial error could have occurred here.

**{¶58}** Notwithstanding all these points, part of the reason that the magistrate excluded the testimony was because Garrett failed to timely disclose her witness list and did not give any indication that H.E.'s counselor would be testifying at the final hearing. The deadline for disclosure of witnesses was on May 22, 2017, and Garrett's witness list was not provided until June 26, 2017, only three days before trial. Defense counsel indicated that he had not had a chance to prepare for the testimony he was unaware he would be facing, and he actually moved to exclude *all* of Garrett's witnesses. The magistrate did not exclude the counselor's testimony in its entirety, but the magistrate did limit H.E.'s counselor's testimony.

{¶59} In reviewing the matter on objections, the trial court indicated it would have excluded the counselor's testimony altogether. The trial court reasoned that

**The deadlines set by the Court for discovery were clear. Although Father did become aware of the Counselor's ongoing involvement with the child this is not the same as knowing whether the Counselor would be testifying or would have anything substantial to present that would merit a vigorous response. Mother has long known of, and been participating in, the counseling * * * and wholly failed to timely identify the Counselor as a witness. She has been particularly aware of whether there was any significant testimony to be offered by the Counselor and elected not to timely identify the same. Now Mother's contention is that the Counselor's testimony is essential to assist in the determination of the children's best interest, but, contradictorily, also asserts that it didn't really matter that no one knew Mother was going to call the Counselor as a witness. The Court finds no merit to Mother's implicit assertion that Father should have had to guess, or prepare, for witnesses she had not properly and timely identified for trial. In fact, the Court finds that the Counselor's testimony should have been prohibited.**

(Doc. No. 345).

{¶60} After reviewing the trial court's reasoning, we can find no abuse of discretion in this case. Regardless, even if we did somehow find that the trial court erred, there is no indication that the counselor would have provided any testimony that would have altered the entire outcome of this case. Therefore, Garrett's third assignment of error is overruled.

*Conclusion*

**{¶61}** For the foregoing reasons Garrett's assignments of error are overruled and the judgment of the Shelby County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**